NATIONAL LABOR RELATIONS BOARD *v.*
FLEETWOOD TRAILER CO., INC.

No. 49. Argued November 8, 1967.—
Decided December 18, 1967.

*Norton J. Come* argued the cause for petitioner. With him on the brief were *Solicitor General Marshall, Arnold Ordman* and *Dominick L. Manoli.*

*Hugh J. Scallon* argued the cause for respondent. With him on the brief was *Jerome C. Byrne.*

*J. Albert Woll, Laurence Gold* and *Thomas E. Harris* filed a brief for the American Federation of Labor and Congress of Industrial Organizations, as *amicus curiae,* urging reversal.

MR. JUSTICE FORTAS delivered the opinion of the Court.

Respondent is a manufacturer of mobile homes. On August 5, 1964, it employed about 110 persons. On August 6, 1964, as a result of a breakdown in collective bargaining negotiations between respondent and the Union,[1] about half of the employees struck. Respondent cut back its production schedule from the prestrike figure of 20 units to 10 units per week, and curtailed its orders for raw materials correspondingly. On August 18, the Union accepted the respondent's last contract offer, terminated the strike, and requested reinstatement of the strikers.

Respondent explained that it could not reinstate the strikers "right at that moment" because of the curtailment of production caused by the strike. The evidence is undisputed that it was the company's intention "at all times" to increase production to the full prestrike volume "as soon as possible."[2]

---

[1] The Union is the San Bernardino-Riverside Counties District Council of Carpenters, United Brotherhood of Carpenters and Joiners of America, AFL–CIO.

[2] Respondent's production program was consistent with this intention. During a period of about 18 weeks after the strike, the num-

The six strikers involved in this case applied for reinstatement on August 20 and on a number of occasions thereafter. On that date, no jobs were available, and their applications were rejected. However, between October 8 and 16, the company hired six new employees, who had not previously worked for it, for jobs which the striker-applicants were qualified to fill. Later, in the period from November 2 through December 14, the six strikers were reinstated.

An NLRB complaint was issued upon charges filed by the six employees. As amended, the complaint charged respondent with unfair labor practices within the meaning of §§ 8 (a)(1) and (3) of the National Labor Relations Act (61 Stat. 140, 29 U. S. C. §§ 158 (a)(1) and (3)) because of the hiring of new employees instead of the six strikers. After hearing, the Trial Examiner concluded that respondent had discriminated against the strikers by failing to accord them their rights to reinstatement as employees in October when respondent hired others to fill the available jobs. Accordingly, the Examiner recommended that respondent should make each of the six whole for loss of earnings due to its failure to return them to employment at the time of the October hirings and until they were re-employed. A three-member panel of the Board adopted the findings, conclusions and recommendations of the Trial Examiner.[3]

The Board filed a petition for enforcement of the order. The Court of Appeals for the Ninth Circuit, one judge dissenting, denied enforcement. 366 F. 2d 126 (1966). It held that the right of the strikers to jobs must be

---

ber of units scheduled per week increased in a steady progression from 10 to 12 to 14 to 16 to 18 to 19 and, finally, to 20 for the week ending December 13, 1964.

[3] 153 N. L. R. B. 425 (1965). "The Board is authorized to delegate to any group of three or more members any or all of the powers which it may itself exercise." Section 3 (b), 61 Stat. 139, 29 U. S. C. § 153 (b).

judged as of the date when they apply for reinstatement. Since the six strikers applied for reinstatement on August 20, and since there were no jobs available on that date, the court concluded that the respondent had not committed an unfair labor practice by failing to employ them. We granted certiorari on petition of the Board. 386 U. S. 990 (1967). We reverse.

Section 2 (3) of the Act (61 Stat. 137, 29 U. S. C. § 152 (3)) provides that an individual whose work has ceased as a consequence of a labor dispute continues to be an employee if he has not obtained regular and substantially equivalent employment. If, after conclusion of the strike, the employer refuses to reinstate striking employees, the effect is to discourage employees from exercising their rights to organize and to strike guaranteed by §§ 7 and 13 of the Act (61 Stat. 140 and 151, 29 U. S. C. §§ 157 and 163). Under §§ 8 (a)(1) and (3) (29 U. S. C. §§ 158 (1) and (3)) it is an unfair labor practice to interfere with the exercise of these rights. Accordingly, unless the employer who refuses to reinstate strikers can show that his action was due to "legitimate and substantial business justifications," he is guilty of an unfair labor practice. *NLRB* v. *Great Dane Trailers,* 388 U. S. 26, 34 (1967). The burden of proving justification is on the employer. *Ibid.* It is the primary responsibility of the Board and not of the courts "to strike the proper balance between the asserted business justifications and the invasion of employee rights in light of the Act and its policy." *Id.,* at 33–34. See also *NLRB* v. *Erie Resistor Corp.,* 373 U. S. 221, 228–229, 235–236 (1963). *Universal Camera Corp.* v. *NLRB,* 340 U. S. 474 (1951), is not an invitation to disregard this rule.[4]

---

[4] Although the decision of the Court of Appeals, as we read it, resulted from its erroneous holding that the right of the strikers to

In some situations, "legitimate and substantial business justifications" for refusing to reinstate employees who engaged in an economic strike have been recognized. One is when the jobs claimed by the strikers are occupied by workers hired as permanent replacements during the strike in order to continue operations. *NLRB* v. *Mackay Radio & Telegraph Co.*, 304 U. S. 333, 345–346 (1938); *NLRB* v. *Plastilite Corp.*, 375 F. 2d 343 (C. A. 8th Cir. 1967); *Brown & Root*, 132 N. L. R. B. 486 (1961).[5] In the present case, respondent hired 21 replacements during the strike, compared with about 55 strikers; and it is clear that the jobs of the six strikers were available after the strike. Indeed, they were filled by new employees.[6]

A second basis for justification is suggested by the Board—when the striker's job has been eliminated for substantial and bona fide reasons other than considerations relating to labor relations: for example, "the need to adapt to changes in business conditions or to improve efficiency." [7] We need not consider this claimed justification because in the present case no changes in methods of production or operation were shown to have been

jobs depends upon the date of their (first) application for reinstatement, it recited that the Board's General Counsel had failed to show "that the jobs of complainants had not been absorbed or that they were still available." Such proof is not essential to establish an unfair labor practice. It relates to justification, and the burden of such proof is on the employer. *NLRB* v. *Great Dane Trailers, supra,* at 34. Cf. also *NLRB* v. *Plastilite Corp.,* 375 F. 2d 343, 348 (C. A. 8th Cir. 1967).

[5] Unfair labor practice strikers are ordinarily entitled to reinstatement even if the employer has hired permanent replacements. See *Mastro Plastics Corp.* v. *NLRB,* 350 U. S. 270, 278 (1956).

[6] The Trial Examiner found that "the six job openings in October could have been filled by the striker applicants and, had the Respondent considered them as employees rather than as mere applicants for hire, would have been so filled."

[7] Brief on behalf of NLRB 15.

instituted which might have resulted in eliminating the strikers' jobs.

The Court of Appeals emphasized in the present case the absence of any antiunion motivation for the failure to reinstate the six strikers. But in *NLRB* v. *Great Dane Trailers, supra,* which was decided after the Court of Appeals' opinion in the present case, we held that proof of antiunion motivation is unnecessary when the employer's conduct "could have adversely affected employee rights to *some* extent" and when the employer does not meet his burden of establishing "that he was motivated by legitimate objectives." *Id.,* at 34. *Great Dane Trailers* determined that payment of vacation benefits to nonstrikers and denial of those payments to strikers carried "a potential for adverse effect upon employee rights." Because "no evidence of a proper motivation appeared in the record," we agreed with the Board that the employer had committed an unfair labor practice. *Id.,* at 35. A refusal to reinstate striking employees, which is involved in this case, is clearly no less destructive of important employee rights than a refusal to make vacation payments. And because the employer here has not shown "legitimate and substantial business justifications," the conduct constitutes an unfair labor practice without reference to intent.

The Court of Appeals, however, held that the respondent did not discriminate against the striking employees because on the date when they applied for work, two days after the end of the strike, respondent had no need for their services. But it is undisputed that the employees continued to make known their availability and desire for reinstatement, and that "at all times" respondent intended to resume full production to reactivate the jobs and to fill them.

It was clearly error to hold that the right of the strikers to reinstatement expired on August 20, when they first

applied. This basic right to jobs cannot depend upon job availability as of the moment when the applications are filed. The right to reinstatement does not depend upon technicalities relating to application. On the contrary, the status of the striker as an employee continues until he has obtained "other regular and substantially equivalent employment." (29 U. S. C. § 152 (3).) Frequently a strike affects the level of production and the number of jobs. It is entirely normal for striking employees to apply for reinstatement immediately after the end of the strike and before full production is resumed. If and when a job for which the striker is qualified becomes available, he is entitled to an offer of reinstatement. The right can be defeated only if the employer can show "legitimate and substantial business justifications." *NLRB* v. *Great Dane Trailers, supra.*

Accordingly, the judgment of the Court of Appeals is vacated and the cause is remanded for further proceedings consistent with this opinion.[8]

*It is so ordered.*

Mr. Justice Marshall took no part in the consideration or decision of this case.

Mr. Justice Harlan, whom Mr. Justice Stewart joins, concurring in the result.

The issue in this case seems to me rather simpler, and the indicated resolution of it rather more obvious, than the majority opinion implies. A striking worker remains

---

[8] The respondent contends that the Union agreed to a nonpreferential hiring list and thereby waived the rights of the strikers to reinstatement ahead of the new applicants. The Board found that the Union, having lost the strike, merely "bowed to the [respondent's] decision." The Court of Appeals did not rule on this point or on the effect, if any, that its resolution might have upon the outcome of this case. Upon remand, the issue will be open for such consideration as may be appropriate.

an "employee" at least as long as his job remains unfilled and he has not found other equivalent work.[1]   Consequently, as the Court of Appeals stated in this case, "If their jobs had not been filled or eliminated due to a decrease in production, the strikers were entitled to be treated as employees and to be given preference over other job applicants."   366 F. 2d, at 128.

In the present case, full production was not resumed until two months after the strikers indicated their willingness to return to work.   The only question is whether the six strikers here involved were still at that point "employees" whom the employer had an affirmative obligation to prefer.   The Trial Examiner, whose decision was affirmed by the Board, concluded that the strikers were still employees because the employer had neither abolished nor filled their jobs but intended at all times to return to full production "as soon as practicable." [2]   The Court of Appeals found that the six had lost their employee status because their jobs were unavailable, by reason of a production cutback, at the precise and earlier moment when they offered to return to work.   Yet it seems palpably inconsistent with the statutory purpose in preserving the employee status of strikers to hold that the temporary production adjustment occasioned by the strike itself is the equivalent of "permanent replacement" or "job abolition" and de-

---

[1] Section 2 (3) of the National Labor Relations Act, 61 Stat. 137, 29 U. S. C. § 152 (3), reads in part as follows:

"The term 'employee' . . . shall include any individual whose work has ceased as a consequence of, or in connection with, any current labor dispute or because of any unfair labor practice, and who has not obtained any other regular and substantially equivalent employment . . . ."

[2] Nothing in the record suggests that the employer believed, or had reason to believe, that the six employees' offers to return to work had been revoked by October.

stroys the right of a striker to preference in rehiring. I would reverse the Court of Appeals on the basis of the Trial Examiner's conclusion that the employer's error was to see the strikers "only as applicants for employment who were entitled to no more than non-discriminatory consideration for job openings. But they had a different standing—they were employees." 153 N. L. R. B., at 428.

The problems of "employer motivation" and "legitimate business justification" are not, on this view, involved in this case at all. The employer's obligation was not simply to be neutral between strikers and nonstrikers, or between union and nonunion personnel, an obligation that may give rise to questions concerning an employer's reasons, good or bad, for making employment decisions. This employer simply failed, for whatever reasons, to recognize the status given the six strikers by the Act, and its corresponding obligation to them. It did not assert in this Court any "legitimate business justification" whatever for refusing to rehire the six strikers in October; it claimed only that it did not need a reason. Since this claim was simply wrong, no question of "motivation" or "justification" need be reached here.

On this basis I concur in the judgment of the Court.