**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**PACE MOTOR LINES, INC., Respondent.**

**No. 629, Docket 82–4131.**

United States Court of Appeals, Second Circuit.

Argued Jan. 12, 1983.

Decided Jan. 17, 1983.*

Opinion March 21, 1983.

---

\* This petition was originally heard on January 12, 1983, and was decided by order dated January 17, 1983. Such a summary disposition has no precedential value under our Local Rule

§ 0.23. Counsel for petitioner, however, has requested that the January 17 order be published, and we have decided to repeat the sub-

Michael David Fox, Atty., N.L.R.B., Washington, D.C. (William A. Lubbers,

Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, John G. Elligers, Diana Ceresi, Attys., N.L.R.B., Washington, D.C., of counsel), for petitioner.

Howard Wilgoren, Boston, Mass. (Lepie & Coven, Sidney A. Coven, Joseph E. Lepie, Boston, Mass., of counsel), for respondent.

Before FEINBERG, Chief Judge, and CARDAMONE and DAVIS,** Circuit Judges.

PER CURIAM:

It is uncontested that respondent Pace Motor Lines, Inc. (the Company) violated the National Labor Relations Act by a series of coercive antiunion actions. It is against this background that we consider the Board's remaining findings. See *NLRB v. Clark Manor Nursing Home Corp.,* 671 F.2d 657, 660 (1st Cir.1982).

■ The Company argues first that there is insufficient evidence to support the Board's finding that Frank Zamfino was discharged in violation of § 8(a)(1) of the Act. According to the Company, Zamfino's refusal to drive allegedly unsafe vehicles was an individual, spur-of-the-moment decision and not part of any concerted activity, which is a necessary predicate for the statutory violation charged. The Company cites *Ontario Knife Co. v. NLRB,* 637 F.2d 840, 845–46 (2d Cir.1980), for the proposition that a single employee's walking off the job to protest a work assignment cannot constitute concerted activity. But as the court in *Ontario Knife* noted, "[i]ndividual activity can be protected . . . if it is 'looking toward group action.' " Id. at 845. Moreover, unlike the situation in *Ontario Knife,* it appears that Zamfino's action was part of a continuing group effort to ameliorate allegedly unsafe working conditions. A number of drivers had problems with unsafe vehicles. At a December 1980 employee

stance of that order in this per curiam opinion, which will be published.

** Honorable Oscar H. Davis of the United States Court of Appeals for the Federal Circuit, sitting by designation.

meeting, the drivers told the Company of their safety concerns. Immediately after his refusal to drive, Zamfino contacted the union in order to have active union organizing efforts resumed. Zamfino then encouraged employees to sign union cards, in part with the argument that it was time to "institute safety methods." A number of drivers signed the cards, and "some 18" workers went on strike in late April 1979, approximately three weeks after Zamfino's discharge. Under these circumstances, we believe the Board had sufficient evidence to support its conclusion that Zamfino's refusal to drive was part of concerted employee efforts to obtain safe equipment. We therefore need not consider the Board's alternative reliance on the presumption of concerted activity enunciated in *Alleluia Cushion Co.,* 221 NLRB 999 (1975).

The Company argues next that it had "legitimate and substantial business justifications" for its refusal to reinstate the strikers. *NLRB v. Fleetwood Trailer Co.,* 389 U.S. 375, 378, 88 S.Ct. 543, 545, 19 L.Ed.2d 614 (1967). The Company blames its failure to recoup business in part on union resistance at the Meyers warehouse and on vandalism to company equipment. The Company warned employees before the strike that it would curtail its operations and lay off workers if the employees continued their union organizing efforts. The Company also admitted that work was available well into the strike. Moreover, nine strikers were lawfully discharged or quit, which should have opened up jobs for other strikers. Finally, the Company introduced almost no credible evidence of the alleged vandalism or of its efforts to recoup business. Accordingly, we cannot say that the Board erred in concluding that the Company did not meet its burden of establishing a legitimate business justification for its refusal to reinstate the strikers.

We have considered all of the Company's arguments, including those relating to remedy and the failure of certain strikers to request reinstatement, and we find that the arguments are without merit. Accordingly, we grant the Board's application to enforce its order.