785 F.2d 249
 121 L.R.R.M. (BNA) 2926, 104 Lab.Cas. P 11,806
 ARLINGTON HOTEL COMPANY, INC., Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent,
and
Southern Missouri-Arkansas District Council, International
Ladies' Garment Workers' Union, AFL-CIO, (Charging
Parties), Intervenor.
 No. 85-1006.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Oct. 14, 1985.
Decided March 4, 1986.
Rehearing and Rehearing En Banc Denied April 24, 1986.
 
 Russell Gunter, Little Rock, Ark., for petitioner.
 Robert Bell, Washington, D.C., for respondent.
 Before HEANEY, Circuit Judge, HENLEY, Senior Circuit Judge, and JOHN R. GIBSON, Circuit Judge.
 HEANEY, Circuit Judge.
 
 
 1
 This case is before the Court on the petition of Arlington Hotel Co., Inc. (the Hotel) for review of an order of the National Labor Relations Board. The Board found that the Hotel violated sections 8(a)(3) and (1) of the National Labor Relations Act, 29 U.S.C. Secs. 158(a)(3) and (1), by implementing a striker recall policy which restricted the recall of strikers to their pre-strike positions and resulted in the preferential hiring of new employees in jobs that the strikers were qualified to perform. For reversal, the hotel argues that its recall system complied with the law inasmuch as returning strikers were offered their old jobs or substantially equivalent jobs, and that it is not obligated to offer returning strikers any available job for which they are qualified. We enforce the Board's order.
 
 BACKGROUND
 
 2
 On March 12, 1981, the Southern Missouri-Arkansas District Council, International Ladies Garment Workers Union, AFL-CIO (the Union) notified Horst Fischer, general manager of the Hotel, that employees seeking Union representation would strike the next day. The Union's purpose in organizing the strike was to obtain recognition as collective-bargaining representative for a unit of service workers at the Hotel. On March 13, 1981, approximately sixty-six employees--including waitresses, maids, busmen, kitchen help, bellmen, and maintenance workers--did not report to work.
 
 
 3
 This strike occurred during the busiest time of the year for the Hotel. The Hotel was ninety-nine percent full with over one thousand guests registered. Consequently, Fischer immediately began hiring replacement workers in order to carry on business.
 
 
 4
 On March 16, 1981, three days after it began, the strike ended. At 5:00 p.m., the Union sent the Hotel the following telegram:
 
 
 5
 On behalf of all striking employees we hereby apply unconditionally for reinstatement to their old positions and/or their maximum employments rights under the law.
 
 
 6
 On March 17, the striking employees began returning to the Hotel, individually, and presented management with a form letter:
 
 
 7
 I hereby apply unconditionally for my old job back, or if my old job is not available, my maximum employment rights under the law.
 
 
 8
 Upon notification of the strike's end, the Hotel ceased hiring replacements. Fischer then devised and administered a system for recalling strikers. Striking workers were categorized by their job titles, and were listed by Hotel-wide seniority within each title. Where no opening existed in the employee's pre-strike position, the employee was required to wait for such an opening, and was not considered for any other job regardless of his qualifications. The Hotel was fully aware that the strikers were qualified to fill many different hotel jobs, because it employed a practice of cross-training employees. Using this system, thirty-one strikers were immediately reinstated. Ten were recalled within several weeks. Twenty-five striking employees were not recalled and were locked into a job-specific chart.
 
 
 9
 From the end of the strike until December 11, 1981, when the record in this case closed, the Hotel hired over two hundred new employees in positions that the unrecalled strikers were qualified to fill. Also during that period, consistent with its policy of cross-training and developing multiple capabilities for its employees, the Hotel filled numerous vacancies by transferring employees, who had not been strikers, between departments.
 
 
 10
 On March 23, 1981, the Union filed an unfair labor practice charge alleging that the Hotel had violated section 8(a)(1), and (3), and (5) of the Act. This charge was subsequently amended and consolidated with a second charge. An administrative hearing was held on December 9, 10, and 11, 1981 before Administrative Law Judge Robert A. Gritta. On August 9, 1982, the ALJ issued his opinion, finding that the Hotel had violated sections 8(a)(1) and (3) of the Act by failing to recall strikers to any position other than to their former jobs or their substantial equivalent, rather than recalling strikers to available positions for which they were qualified. On December 13, 1984, the Board adopted the findings and decision of the ALJ. The Board's order requires the Hotel to offer strikers reinstatement to their former jobs or, if unavailable, to substantially equivalent positions or, if unavailable, to positions for which they are qualified. The Board's order further requires the Hotel to make strikers whole for any loss of earnings suffered because of the discrimination against them. The Hotel filed a petition for review in this Court.
 
 ANALYSIS
 
 11
 The Hotel argues that, with this decision, the Board has departed from its own precedent. In its view, the Act and prior Board decisions require employers to recall strikers only to their former or substantially equivalent positions, imposing no obligation upon employers to recall strikers to other positions for which they are qualified.
 
 
 12
 In determining that the Hotel was obligated to recall strikers to jobs for which they are qualified, the Board relied on N.L.R.B. v. Fleetwood Trailer Co., 389 U.S. 375, 88 S.Ct. 543, 19 L.Ed.2d 614. Fleetwood addressed the question of whether a striker's right to reinstatement expires if, on the date he first applies for reinstatement, his position is filled by a replacement worker, or whether this right continues until a job becomes available. The Court determined that this right continues: "If and when a job for which the striker is qualified becomes available, he is entitled to an offer of reinstatement." Fleetwood, at 381, 88 S.Ct. at 547, 19 L.Ed.2d at 619. We need not definitively rule as to the scope of this statement from Fleetwood.
 
 
 13
 Under the facts of this case, we find that the Board did not err in holding that the Hotel discriminated against the strikers by not offering them jobs for which they were qualified. The Hotel had a policy of cross-training and developing multiple capabilities for its employees. After the strike, the Hotel filled numerous vacancies by transferring employees, who had not been strikers, between unrelated jobs and departments. The transfers included: painter to dishwasher to houseman; houseman to hotel trainee; bar porter to furniture refinisher; bartender to room service manager; Tack Room waiter to room service waiter; Tack Room waitress to Venetian dining room waitress; maid to bath attendant; houseman to garage attendant; busboy to engine room worker; and busboy to room service waiter.
 
 
 14
 Although the hotel was hiring new employees and transferring non-strikers, it did not consider a striking housekeeping inspectress for any of twenty-two maid openings. Two bellmen were not considered for twenty-six new housemen openings. Three engine room employees, a maintenance man, a furniture refinisher, and a carpenter, were not considered for jobs as housemen either--despite the fact that the Hotel considered them qualified.
 
 
 15
 Further, a waitress, who had worked in the Venetian dining room before the strike, was not offered a job in the Tack Room, although a non-striking employee was transferred between the two rooms. In addition, the Hotel delayed reinstating at least eleven employees whose pre-strike or similar jobs became available.
 
 
 16
 The discriminatory restrictiveness in the Hotel's recall policy is particularly clear when viewed in light of the Hotel's long-term policy of favoring cross-training and multiple capabilities of all Hotel employees. As Fischer testified at the hearing: "I believe in cross-training."
 
 
 17
 The Hotel's recall policy, therefore, clearly discriminated against unreinstated strikers in favor of new job applicants and employees--including permanent striker replacements--already on the payroll. Thus, the burden was on the Hotel to establish a substantial and legitimate business justification for its discriminatory conduct.
 
 
 18
 The Hotel has asserted two justifications for its conduct, neither of which involves its ability to operate its business efficiently. Its first justification is that it did not offer the strikers any of the vacancies because it feared liability under the Act if it offered a striker anything but "substantially equivalent employment." Its other justification is that, in its view of the law, the strikers had no entitlement to those vacancies. Neither purported justification excuses its conduct. The decision of the Board is enforced.