805 F.2d 1036
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Vickie Lee SCHAAF, Administratrix of the Estate of Arlington
C. Schaaf, Jr., and Vickie Lee Schaaf,
Individually, and as Beneficiary of the
Estate of Arlington C. Schaaf,
Jr., Plaintiff-Appellant,
v.
AMERICAN CUSTOM METALS, DIVISION OF I.K.S., INC., Defendant-Appellee.
 No. 85-5829.
 United States Court of Appeals, Sixth Circuit.
 Oct. 7, 1986.
 
 Before MILBURN and BOGGS, Circuit Judges, and DEMASCIO, District Judge.*
 PER CURIAM.
 
 
 1
 Plaintiff-appellant, Vickie Lee Schaaf, appeals from a district court order granting summary judgment in favor of defendant-appellee, American Custom Metals. For the reasons set forth below, we affirm.
 
 
 2
 The plaintiff's deceased husband, Arlington C. Schaaf, Jr., was employed by American Custom Metals. In February 1983, the collective bargaining agreement between American Custom Metals and the local labor union expired, and the union, including Mr. Schaaf, went out on strike. During the four-month-long strike, the company hired new workers to replace those who were on strike.
 
 
 3
 The first Monday after the strike ended, Mr. Schaaf attempted to report back to work; he was told that there was no work for him, and was turned away from company premises. Mr. Schaaf died about eight months later, after an illness. He never did return to work nor did he apply for disability benefits with respect to his illness.
 
 
 4
 Upon Mr. Schaaf's death, Mrs. Schaaf sought the proceeds of life and disability insurance policies that the company keeps on employees pursuant to the collective bargaining agreement. The company denied her claims. Mrs. Schaaf subsequently brought this action in federal district court, contending that Mr. Schaaf had been a "laid-off employee" and was, therefore, entitled to life and disability benefits. The district court granted summary judgment in favor of the company, holding that Mr. Schaaf was an unreinstated striker and, as such, was not entitled to life and disability insurance benefits. Mrs. Schaaf now appeals to this Court.
 
 I.
 
 5
 Mrs. Schaaf argues that her husband had a right to insurance coverage under the terms of the collective bargaining agreement. Specifically, she cites p 28.1 of the collective bargaining agreement, which provides that--
 
 
 6
 [t]he company shall provide each and every employee [certain insurance benefits]
 
 
 7
 (emphasis added), and contends that Mr. Schaaf was, at all times relevant, an "employee." "Employee" is not defined in the agreement, but Mrs. Schaaf argues that p 15.13, which deals with seniority, provides an implicit definition of the term. That paragraph states that--
 
 
 8
 [s]eniority shall be lost and employment terminated on an employee [followed by a list of seven specific conditions].
 
 
 9
 The listed condition that is arguably applicable to this case, subsection (c), is one which provides for loss of seniority and employment termination if an employee is absent for three consecutive days without either notifying the company or providing a satisfactory reason for failing to notify the company; the employee must then notify the company weekly thereafter. That subsection implies that one may still be an "employee" while away from the workplace for an extended period of time if one notifies the company, initially and at least weekly thereafter, or has a satisfactory reason for not notifying the company.
 
 
 10
 Mrs. Schaaf argues that the subsection also implies that one who is not at the workplace for an extended period of time because he is on strike is still an "employee." We do not find that reasoning persuasive. The cited subsection of p 15.13 deals only with the narrow area of seniority and in no way purports to provide a definition for the entire agreement. We hold that this language does not imply that a striker is an "employee" for purposes of life and disability insurance benefits under the collective bargaining agreement.
 
 II.
 
 11
 In the absence of a suitable definition of "employee" in the collective bargaining agreement, we look for guidance to the definition of "employee" used in the contemporaneous insurance contract. American Custom Metals and its group life insurance carrier entered into a contract of insurance pursuant to the collective bargaining agreement. Union officials presumably had access to the insurance contract and the record shows no union objections to its terms. Therefore, we may look to the insurance contract as a contemporaneous interpretation of the collective bargaining agreement, to aid us in defining an ambiguous term in the agreement.
 
 
 12
 The group life insurance contract covered "employees" of the company, who are defined as follows:
 
 Employee means a person
 
 13
 a. who is directly employed in the regular business of and compensated for services by the Employer or any Subsidiary or Affiliate:
 
 
 14
 and
 
 
 15
 b. who actively expends time and energy in the service of the Employer or any Subsidiary or Affiliate.
 
 
 16
 * * *
 
 
 17
 Notwithstanding 8.b., a person will be deemed actively expending time and energy in the service of the Employer on each day of a regular paid vacation, and on a regular nonworking day on which he is not disabled, provided he was actively expending time and energy in the service of the Employer, including any Subsidiary or Affiliate, on the last preceding regular working day.
 
 
 18
 The policy provides that this coverage can be terminated, as follows:
 
 
 19
 An individual's insurance will automatically terminate immediately upon the earliest of the following dates:
 
 
 20
 * * * *
 
 
 21
 3. the date of the employee's termination of employment with the Employer or the date he otherwise ceases to be eligible for insurance:
 
 
 22
 a. For the purposes of this policy, an employee's employment will cease upon cessation of his active expenditure of time and energy for the employer.
 
 
 23
 b. Notwithstanding a. above, a person may continue to be an employee for coverages other than Weekly Income Benefits if such employee isi. on an approved leave of absence,
 
 
 24
 ii. temporarily laid off,
 
 
 25
 iii. employed on a part-time basis, or
 
 
 26
 iv. unable to work because of disability,
 
 
 27
 Thus, under the insurance contract provisions, Mr. Schaaf's coverage ended when he ceased "actively expending time and energy in the service of the [company]," i.e., when he went out on strike. He did not fall within any of the exceptions to this general rule listed in the "notwithstanding" clauses. Therefore, using the language of the insurance contract as an aid to construing the collective bargaining agreement, we conclude that Mr. Schaaf was not an "employee" eligible for life and disability insurance benefits under the collective bargaining agreement.
 
 III.
 
 28
 Mrs. Schaaf also argues that Mr. Schaaf was an "employee" entitled to life and disability benefits, because a striker remains an "employee" for purposes of the National Labor Relations Act. See 29 U.S.C. Sec. 152(3); National Labor Relations Board v. McKay Radio and Telegraph Co., 304 U.S. 333, 346 (1938). Under the National Labor Relations Act, an employer may replace striking employees with others in order to carry on business and need not discharge replacement workers when the strike ends in order to reopen the strikers' jobs, but the strikers remain "employees" under the Act to the extent that the employer must reinstate them if there are any job openings. 29 U.S.C. Sec. 158; see McKay, 304 U.S. at 346; NLRB v. Fleetwood Trainer Co. 389 U.S. 375 (1967) (hiring of new employees at a time when there are outstanding applications for reinstatement from strikers is presumptively a violation of the Act, regardless of intent, unless the employer demonstrates a "legitimate and substantial business reason" for not hiring the strikers); Laidlaw Corp. v. NLRB, 414 F.2d 99 (7th Cir.1969) (refusal to offer a replaced striker full reinstatement to his former job is an unfair labor practice if a vacancy exists).
 
 
 29
 This definition of "employee" is intended for a completely different purpose than is that under the collective bargaining agreement. The concern under the applicable provisions of the National Labor Relations Act is with reinstating strikers, of effectively restoring them to employee status. The concern under the collective bargaining agreement is with providing negotiated benefits to those who are currently employed by the company, including those, if any, who might have had their employee status restored. Thus, we hold that the definition of "employee" under the National Labor Relations Act is not applicable to the collective bargaining agreement.
 
 IV.
 
 30
 Mrs. Schaaf also argues that both Mr. Schaaf and American Custom Metals had considered Mr. Schaaf to be a "laid-off employee" until his death. In support of this assertion, Mrs. Schaaf produced an August 1983 letter from a company official, which describes Mr. Schaaf as a "laid-off" employee. The company responded to this assertion and letter with an affidavit of the author of the letter, stating that he referred to Mr. Schaaf as "laid-off" to assist Mr. Schaaf in finding new employment without advising a prospective employer that Mr. Schaaf was unemployed because he was replaced during a strike against the defendant.
 
 
 31
 This is a contested issue of fact but is not a contested issue of material fact because the insurance policy provided continued coverage for laid-off employees for only two months after being laid off. Because Mr. Schaaf's illness and death occurred more than two months after he was arguably "laid off," this contention, even if accepted as true, would not affect the outcome of the suit.
 
 V.
 
 32
 Finally, Mrs. Schaaf contends that the company violated the collective bargaining agreement and committed an unfair labor practice by failing to provide Mr. Schaaf with life and disability insurance coverage. These issues were not alleged in the complaint or argued below, and are therefore not properly before this court.
 
 
 33
 Accordingly, the district court order granting summary judgment in favor of American Custom Metals is AFFIRMED.
 
 
 
 *
 The Honorable Robert E. DeMascio, United States District Judge for the Eastern District of Michigan, sitting by designation