WRIGHT TOOL COMPANY, Petitioner,
Cross–Respondent,

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent,
Cross–Petitioner.

Nos. 87–5386, 87–5435.

United States Court of Appeals,
Sixth Circuit.

Argued May 28, 1988.

Decided June 3, 1988.

John N. Childs (argued), and John T. Billick, Buckingham, Doolittle and Burroughs, Akron, Ohio, for Wright Tool Co.

Aileen Armstrong, Deputy Associate Gen. Counsel, N.L.R.B., Washington, D.C., W. Christian Schumann, Steven B. Goldstein (argued), and Frank Calatrello, Regional Director, N.L.R.B., Region 8, Cleveland, Ohio, for N.L.R.B.

Before KEITH, MARTIN and NELSON, Circuit Judges.

PER CURIAM:

Wright Tool Company ("Wright Tool") petitions this court to review an order of the National Labor Relations Board finding

that Wright Tool violated §§ 8(a)(3) and (1) of the National Labor Relations Act, as amended, 29 U.S.C. §§ 158(a)(3) and (1), by hiring new employees instead of recalling twenty-seven former strikers, and requiring Wright Tool to cease and desist from the complained-of practice or any other interference with rights guaranteed under § 7 of the Act, 29 U.S.C. § 157; to offer the twenty-seven strikers immediate and full reinstatement to their former positions or, if those positions no longer exist, to substantially equivalent positions, discharging, if necessary, any employee hired as a replacement in any positions formerly performed by the strikers or for which the strikers were qualified to perform between October, 1984 and January, 1985; to place all discriminatees for whom Wright Tool had no immediate position available on a preferential hiring list; to make whole each discriminatee; and to post copies of a remedial notice. The Board has cross-petitioned for enforcement. For the following reasons, we DENY Wright Tool's petition for review, and we ENFORCE the order of the Board.

## I.

Wright Tool is an Ohio corporation engaged in the business of manufacturing hand tools in its plant located in Barberton, Ohio. The bargaining unit at Wright Tool is represented by the International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers, Local Lodge No. 1055 ("Union"). All of the alleged discriminatees were members of the bargaining unit, and were represented by the Union.

On or about April 12, 1983, the employees of Wright Tool engaged in an economic strike, which lasted until or about May 23, 1984. At the conclusion of the strike, the Union made an unconditional offer on behalf of all employees, including the twenty-seven alleged discriminatees, to return to work. At that time, Wright Tool placed sixty-two strikers on a recall list. As of the end of May, thirty of the listed strikers had been recalled.

Beginning on or about October 1, 1984, and continuing until the date of the hearing before the Administrative Law Judge on August 12, 1986, thirteen vacancies occurred for the position of light machine operator; nine vacancies occurred for drill operator; eight vacancies occurred for forge press operator; seven vacancies occurred for large lathe operator; four vacancies occurred for metal polisher and grinder; two vacancies apiece occurred for automatic screw machine operator and chucker operator; and one vacancy apiece occurred for electrical maintenance man and platter racker. Despite the fact that the twenty-seven former strikers had worked on a wide variety of machines prior to the strike, and that most of them had spent at least some time performing tasks for which there now were vacancies, Wright Tool hired new employees to fill the vacancies.

Charges of unfair labor practices were filed on December 27, 1984, by one of the twenty-seven strikers, and on January 3, 1985, by the Union. A consolidated complaint was issued on behalf of the General Counsel on January 30, 1985. After a hearing before the Administrative Law Judge, the Board issued the above-described order on February 23, 1987.

## II.

Although Wright Tool challenges the factual findings of the Board at length, it raises two overarching questions which must be disposed of at the outset. First, Wright Tool argues that the Board erred in not requiring the General Counsel to demonstrate that the twenty-seven former strikers were in fact qualified to fill the vacancies.

However, the burden of proof on matters which relate to justification for the employer's actions rests with the employer. *NLRB v. Fleetwood Trailer Co.*, 389 U.S. 375, 378–79 n. 4, 88 S.Ct. 543, 546 n. 4, 19 L.Ed.2d 614 (1967); *NLRB v. Great Dane Trailers*, 388 U.S. 26, 34, 87 S.Ct. 1792, 1798, 18 L.Ed.2d 1027 (1967). Certainly, the claim that the strikers were not qualified for the vacancies relates to justifica-

tion. Therefore, Wright Tool had the burden of proving that the strikers were not qualified.

■ Also, Wright Tool argues that the General Counsel was required to demonstrate an anti-union motivation in order to prove a violation of the Act, citing *Fleetwood Trailer, supra.* The short and sufficient answer to this argument is that *Fleetwood Trailer* requires such a showing *only* if the employer meets its burden of establishing that it was motivated by legitimate objectives. 389 U.S. at 380, 88 S.Ct. at 547. Because, as discussed in Section III, *infra,* Wright Tool did not meet this burden, no showing of anti-union animus was necessary to establish a violation.

### III.

■ Wright Tool's primary argument concerning the factual conclusions of the Board is that it incorrectly rejected the existence of substantial and legitimate business reasons for the failure to recall the twenty-seven strikers. Findings of fact made by the Board are to be accepted as correct on review if they are supported by substantial evidence on the record considered as a whole. *NLRB v. A & T Manufacturing,* 738 F.2d 148, 149 (6th Cir.1984).

■ Based on this standard, we conclude that there is substantial evidence to support the Board's findings. The record reflects that, although twenty-four of the twenty-seven strikers had previously worked in the positions which became vacant, Wright Tool failed to recall them for those positions. As for the remaining three strikers, there is no evidence to suggest that the *new* employees were more qualified than the three strikers. Indeed, the essentially uncontroverted testimony of employee witnesses established that employees operated machines after receiving a one or two hour demonstration; certainly, any of the twenty-seven strikers could have been trained to operate any of the machines *at least* as quickly as the new hires.

■ Wright Tool claims that it "demonstrated at the hearing that five of the persons on the recall list have obtained regular and substantially equivalent employment with other employers." We are not persuaded, however, that the Board erred in ordering that reinstatement be offered to the five people in question. One of them (Regina Robertson) explicitly testified that she had not been employed since May of 1984, and there was evidence that each of the remaining four had earned higher wages at his old job. Each of the five indicated, moreover, that he wished to remain on Wright Tool's recall list. It cannot be said, therefore, that by accepting new employment any of the employees manifested an unequivocal resolve not to accept reinstatement. Finally, the Board's order for back pay merely requires Wright Tool "to make whole said employees for any loss of earnings;" because any pay earned elsewhere will have to be deducted from the amount to be paid by Wright Tool, the Board's order will not result in any employee receiving a windfall to which he is not entitled.

■ Concerning Wright Tool's allegation that its post-strike actions were designed to increase productivity, the conclusion of the Board that this contention is baseless is supported by substantial evidence as well. Although Wright Tool claimed that it declined to reinstate the twenty-seven strikers because of their inability to work at a 100% performance level, Wright Tool never actually disciplined any of the twenty-seven for such a failure, nor did Wright Tool ever require its employees to work at a 100% performance level as a condition for continued employment. Moreover, some of the replacement employees worked at a level considerably below the performance of the twenty-seven strikers, but were nonetheless retained. Taken as a whole, there is substantial evidence in the record to support the finding that Wright Tool had no substantial and legitimate business justification for refusing to reinstate the strikers.

### IV.

Therefore, for the foregoing reasons, the petition for review is DENIED, and the

order of the Board is ENFORCED.[1]

---

1. Wright Tool also challenges many of the credibility findings of the ALJ. Credibility resolutions by the ALJ should be affirmed unless they are inherently unreasonable or self-contradictory. *Thomas Industries, Inc. v. NLRB,* 687 F.2d 863, 866 (6th Cir.1982). We see no reason to disturb the credibility findings of the ALJ.

Also, Wright Tool argues that the reliance on the performance of new employees was irrelevant, and that the ALJ erred in drawing an adverse inference against Wright Tool for its failure to call the strikers' supervisors as witnesses. Upon review, we conclude that these arguments are without merit.