933 F.2d 1010
 137 L.R.R.M. (BNA) 2440
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
TOLEDO 5 AUTO/TRUCK PLAZA, INC., Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent.
 No. 89-5006.
 United States Court of Appeals, Sixth Circuit.
 May 30, 1991.
 
 ORDER ENFORCED.
 Before ALAN E. NORRIS and SUHRHEINRICH, Circuit Judges, and ENGEL, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 This case is before the court on the application of the National Labor Relations Board ("the Board") pursuant to Section 10(e) of the National Labor Relations Act (29 U.S.C. Sec. 160(e)) ("the Act") to enforce its order against Toledo 5 Auto/Truck Plaza, Inc. ("the Company"). The Board issued its order, reported at 291 NLRB No. 46, on September 30, 1988 ordering reinstatement of employee Doris Dunlap ("Dunlap") with backpay, and requiring the Company to furnish the Union with information concerning Unit employees. For the reasons that follow, we enforce the Board's order in full.
 
 I.
 
 2
 The Company operates a combination restaurant, general store, and auto and truck fueling and service facility in Stoney Ridge, Ohio. Since about 1963, the Company and the Union[1] have been parties to a series of collective bargaining agreements. At the expiration of the last agreement on June 23, 1986, the Union commenced an economic strike which lasted until July 15, 1986. On that day, the Union made an unconditional offer to return to work on behalf of the striking employees. The Company, having replaced all of the strikers, did not offer immediate reinstatement at that time to any of them. Furthermore, the Company withdrew recognition from the Union asserting doubt as to its majority status. On May 21, 1987, the Union won a Board-conducted representation election and was certified as the employees' bargaining agent.
 
 
 3
 Dunlap was employed by the Company as a cashier in the control center from April 1968 until the strike began on June 24, 1986. Before the strike, Dunlap worked on the day shift, from 7 a.m. to 3 p.m., for $5.45 per hour. Dunlap served as the Union's steward during most of her tenure with the Company, filing from 30 to 35 grievances against the Company on behalf of her fellow employees, and was active on the picket line during the strike. Among the striking employees, Dunlap had the most seniority and stood first on the recall list. In March 1987, Dunlap was hired at National Marine Manufacture as a purchasing agent for lower wages.
 
 
 4
 On May 26, 1987, the Company offered Dunlap the following offer of reinstatement by certified letter:
 
 Dear Doris:
 
 5
 You are hereby notified that you are being recalled to a position within your former classification. You must return to work by 3:00 p.m., on Friday, May 29, 1987. Please contact Mike Snyder for information regarding scheduling and related matters.
 
 
 6
 If you fail to report within the scheduled time, your recall rights will be terminated.
 
 
 7
 Very truly yours,
 
 Mel Berman
 Owner
 
 8
 Dunlap's daughter picked up this letter from the post office on May 27 and gave it to Dunlap on May 28. Dunlap immediately contacted the union, which suggested she arrange a meeting. She did to, with the Company's general manager, Michael Snyder, at 1 p.m. on May 29.
 
 
 9
 Dunlap and two union business agents attended the meeting along with the Company owner, Snyder and the Company's attorney. When Dunlap asked what wages, benefits, and other working conditions the Company was offering, the Company attorney stated that the offer was for the second shift, from 3 p.m. to 11 p.m., with Monday and Thursdays off, at her pre-strike rate of $5.45 per hour. Upon pressure from the union agent, the Company agreed to pay Dunlap $5.65 per hour, the rate offered in the Company's last contract proposal. Because the two sides could not agree on which insurance plan should apply to Dunlap--the pre-strike Union plan or the one the Company had acquired for the replacement employees--the parties agreed to defer resolution of the matter. Dunlap requested that the terms of her reinstatement be reduced to writing, but this request was refused.
 
 
 10
 Dunlap then asked for a two-week extension of her report date so that she could give adequate notice to her present employer[2] and train her replacement; the Company refused. Dunlap asked for a one-week extension; again the Company refused. After the meeting ended, Dunlap telephoned Snyder and asked if she could report the following day. Snyder refused and told her that if she did not report by 3:30 that afternoon she could consider herself terminated. Dunlap returned to her job at National Marine Manufacturer to work the balance of her shift. On June 2, the Company wrote Dunlap that her recall rights had terminated on May 29.
 
 
 11
 On May 30, the day after Dunlap's refusal of reinstatement, the Company mailed an offer of reinstatement to Barbara Smith, another striker, giving her until Wednesday, June 3, to report to work. Smith did not receive the letter until June 5, and did not respond. On June 26, the Company mailed an offer of reinstatement to Cynthia Hollie, also a striker, giving her until July 3 to report to work. Hollie, who had other employment, did not accept. On July 3, the Company hired a new employee for the job.
 
 
 12
 Having since regained its representation rights in the Board certified election, the Union wrote the Company on June 8 and 16 requesting information about the unit employees and about replacement employees hired since May 29. The Company refused to furnish any of the requested information.
 
 
 13
 On the foregoing facts, the Board found, in agreement with the administrative law judge, that the Company violated Sections 8(a)(3) and (1) of the Act (29 U.S.C. Sec. 158(a)(3) and (1)) by terminating Dunlap after she refused an invalid offer of reinstatement. The Board further found that the Company violated Section 8(a)(5) and (1) of the Act (29 U.S.C. Sec. 158(a)(5) and (1)), by refusing to furnish the Union with the information that it requested on June 8, 1987.
 
 
 14
 The Board's order requires the Company to cease and desist from the unfair labor practices found and from in any like or related manner interfering with, restraining, or coercing employees in the exercise of the rights guaranteed them by Section 7 of the Act (29 U.S.C. Sec. 157). Affirmatively, the order requires the Company to offer Dunlap reinstatement to her former job or a substantially equivalent one without prejudice to her original date of hire or other rights; to make her whole for any loss of earnings she may have suffered by reason of the discrimination against her; to expunge from its records any reference to the unlawful termination and to notify Dunlap in writing that this has been done; to furnish the Union with the information requested in its June 8 letter; and to post an appropriate notice.
 
 II.
 
 15
 On appeal, the Company challenges only the Board's finding that the Company violated Section 8(a)(3) and (1) of the Act (29 U.S.C. 158(a)(3) and (1)) by terminating Dunlap's employment because she rejected an invalid reinstatement offer. Since the Company has abandoned its objection to the Board's finding that the Company violated Section 8(a)(5) and (1) of the Act (29 U.S.C. 158(a)(5) and (1)) by refusing to comply with the Union's June 8 information request, the Board is entitled to summary enforcement of the portions of its order that relates to this offense. NLRB v. Valley Plaza, Inc., 715 F.2d 237, 240-241 (6th Cir.1983).
 
 
 16
 Thus, the only issue we must consider is whether substantial evidence on the record as a whole supports the Board's finding that the Company violated Sections 8(a)(3) and (1) of the Act by terminating employee Dunlap after she requested a one-day extension before reporting to work. "Judgment about such issues as the reasonableness of a reply period ... are uniquely within the Board's special expertise and, consequently, merit large respect on judicial review." John Cuneo, Inc. v. NLRB, 792 F.2d 1181, 1183 (D.C.Cir.1986). Accord NLRB v. Seligman and Assoc., Inc., 808 F.2d 1155, 1161, (6th Cir.1986) (a "reviewing court must defer to the Board's expert determinations about the validity of reinstatement offers"). Where such determinations are based upon substantial evidence, the Board is entitled to have its order enforced. NLRB v. A & T Mfg. Co., 738 F.2d 148, 149 (6th Cir.1984).
 
 
 17
 It is settled that "[e]conomic strikers who unconditionally apply for reinstatement are entitled to reinstatement when replacements leave the strikers' former positions or when vacancies occur for which they are qualified;" NLRB v. American Olean Tile Co., Inc., 826 F.2d 1496, 1499 (6th Cir.1987) and that an employer's failure to offer such reinstatement is prima facie violative of Sections 8(a)(3) and (1) of the Act. Accord NLRB v. Fleetwood Trailer Co., 389 U.S. 375 (1967). In Nuclear Automation Div. of Esterline Electronics Corp., 290 NLRB No. 92 (1988), the Board ruled that an employee has an obligation to contact the employer in order to discuss the precise terms of reinstatement even if the written offer of reinstatement allows a period of consideration that is "unreasonably short." The Board also created an exception for an offer that "on its face makes it clear that reinstatement is dependent on the employee's returning on the [unreasonably short] specified date or if the letter otherwise suggests that the offer will lapse if a decision on reinstatement is not made by that date."[3] Relying on Esterline, the Board in this case found that Dunlap had no obligation to accept the Company's letter of May 27, 1987 because it gave Dunlap "only 1 day to consider the reinstatement offer, and the letter expressly conditioned the offer on compliance with the unreasonably short report-back date."
 
 
 18
 We find that there is substantial evidence in the record to support the Board's finding that the Company violated Sections 8(a)(3) and (1) of the Act by terminating Dunlap. The May 23, 1982 letter provided none of the details of her reinstatement. It was not until her meeting with the Company the following day that Dunlap learned, among other things, that the position being offered was on the afternoon shift, whereas she had previously worked on the day shift; that her two days off per week would not be contiguous; and that her insurance coverage might not be the same as before. Dunlap, therefore, was not in a position to make an informed decision whether to accept the offer until less than four hours before she was required to return to work.
 
 
 19
 Furthermore, the Company refused to put the agreement in writing while at the same time it insisted that Dunlap quit her current employer without giving notice. The Company's claim that it was unable to accommodate Dunlap's request for a single day of grace due to economic necessity is belied by the fact that no substitute was immediately available. Instead, the Company made a second offer to another former striker on June 3, 1987 which was not accepted, and then waited until June 26, 1987 to make a third offer, which also was not accepted. It was not until July 3, 1987 that the Company hired an employee for the cashier's position. As the Board noted, by the time the Company finally hired a new cashier, the position offered Dunlap with such a show of urgency had remained unfilled for more than a month. Given these circumstances, the Board properly held that the offer of reinstatement was invalid. Accordingly, the Board's order is ENFORCED.
 
 
 
 [1]
 Teamsters, Chauffeurs, Warehousemen and Helpers Union, Local No. 20, affiliated with International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, AFL-CIO
 
 
 [2]
 Snyder testified that the Company asks its employees to provide it with "at least a week['s]" notice prior to terminating their employment
 
 
 [3]
 In Esterline, the Board concluded that the employee in that case was not entitled to backpay because, after receiving a letter unconditionally offering her reinstatement and directing her to report to work the next day, she failed to respond. The Board had noted that "[t]he letter did not state that the offer would lapse if she was unable either to report the next day or commence work then or soon thereafter."