935 F.2d 270
 137 L.R.R.M. (BNA) 2568
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
NATIONAL LABOR RELATIONS BOARD, Petitioner,
v.
ORNAMENTAL IRON WORK CO., Respondent.
 No. 90-6020.
 United States Court of Appeals, Sixth Circuit.
 June 11, 1991.
 
 ORDER ENFORCED.
 Before KEITH and MILBURN, Circuit Judges, and COHN, District Judge.*
 PER CURIAM:
 
 
 1
 Petitioner National Labor Relations Board (the "Board") seeks enforcement of its Decision and Order finding respondent Ornamental Iron Work Co. ("Ornamental") violated section 8(a)(3), (1) of the National Labor Relations Act (the "Act"), 29 U.S.C. Secs. 151-168, by discharging and refusing to reinstate employees because of their conduct in a strike. For the following reasons, we ENFORCE the Board's order.
 
 I.
 A.
 
 2
 On May 29, 1987, the Board certified the Iron Workers Shopmen's Local Union No. 468 of the International Association of Bridge, Structural and Ornamental Iron Workers, AFL-CIO (the "Union") as the collective bargaining representative of certain Ornamental employees. Negotiations between Ornamental and the Union began, but, in September 1987, employees became dissatisfied with Ornamental's perceived unwillingness to schedule meetings. As a result of this dissatisfaction, the Union called a strike at midday on October 1. The employees left the plant and began picketing outside the main gate. Eighteen of approximately twenty employees in the bargaining unit struck.
 
 
 3
 At the commencement of the strike, strikers had several confrontations with nonstriking employees and supervisors. Around 4:00 p.m. on October 1, nonstriking employee Adolf Kissner ("Kissner") returned a company truck to the plant. As Kissner pulled into the driveway, picketers surrounded the truck. Striker Charles Currence ("Currence") opened the truck's door, pulled Kissner's leg, and told him to get out. When Kissner did not immediately comply, Currence, referring to a nearby gasoline can, told him, "If you don't get out, we're going to get that gasoline and pour it on your truck and blow your ass away." Joint Appendix at 29 (Testimony of Adolf Kissner). Currence pulled Kissner out of the truck. Kissner then went to his car and drove home.
 
 
 4
 At 5:30 p.m. that day, striker Rodney Ford ("Ford") stepped in front of nonstriking employee Guy Walker's ("Walker") car as Walker left work. Walker stopped the car and striker Bill Graham ("Graham") kicked the car door, denting it. Walker then left the premises.
 
 
 5
 A few minutes later, employee James Swope ("Swope"), who had been making deliveries away from the plant that day, drove up to the plant. Seeing that a strike had begun, Swope left his truck in the street with the motor running and joined the picketers. Company Vice-President James Beasley ("Beasley") noticed the truck as he was walking to his car to leave the plant. He and superintendent Rudy Domingo ("Domingo") began walking toward the truck to drive it into the plant. Swope called out to Domingo, "[I]t looks like you're going to have to drive the truck in, Rudy." Joint Appendix at 42 (Testimony of James Beasley). Striker Larry Winkler then shouted, "Rudy will drive that truck in over my dead body." Id. at 43. Beasley continued to walk toward the truck, but Domingo left him. Moments later, Domingo called Winkler a thief assaulted him. Domingo and Winkler began scuffling, but were quickly separated.
 
 
 6
 The next morning, Walker drove onto Ornamental's parking lot and was met by striker Ronald Buck ("Buck"), who was carrying a baseball bat. Buck told Walker that he would use the bat on Walker's head if he got out of his car. Walker stayed in his car until he convinced other picketers that he only wanted to get his paycheck.
 
 
 7
 For the rest of the strike, employees picketed the plant front entrance. The picketers stopped vehicles and asked the drivers to respect their picket line, but did not prevent any vehicles from entering the plant. On one occasion, strikers Henry Petz and Larry Norris stepped in front of a Chippewa Steel Company truck that was attempting to enter the plant. They asked the driver, Roy Poe ("Poe"), not to cross the picket line. Poe pulled his truck back from the entrance and waited. As previously arranged, police arrived and escorted Poe though the picket line and into the plant.
 
 
 8
 After an October 8, 1987, negotiation session between the Union and Ornamental, which Federal Mediator Tom Mick attended, the Union sent a mailgram to Ornamental notifying it that the Union wished to end the strike and that the employees unconditionally were offering to return to work. Ornamental received this notice on October 12. On October 13, the former strikers returned to the plant accompanied by the Union's business manager, Carl Gray ("Gray"). Ornamental management invited the employees and Gray into the plant and told them that three strikers had been replaced, four strikers would be placed on a preferential hiring list, and the remaining eleven were discharged for illegal strike activity. None of the eighteen strikers was recalled to work at that time.
 
 B.
 
 9
 On October 13, 1987, the Union filed a charge with the Board alleging that Ornamental violated section 8(a)(3), (1) of the Act, 29 U.S.C. Sec. 158(a)(3), (1), by refusing to reinstate its employees because they engaged in a lawful strike. On November 20, 1987, the Board's General Counsel issued a complaint, which was amended on March 11 and April 7, 1988. Ornamental filed answers denying that it committed any unfair labor practices. An Administrative Law Judge ("ALJ") held a hearing on the amended complaint on May 2-4, 1988.
 
 
 10
 On September 15, 1988, the ALJ issued a decision finding that Ornamental violated the Act by discharging eleven strikers and refusing to reinstate four strikers after the Union made an unconditional offer to return to work on their behalf. The ALJ also found, however, that the discharge of three other strikers was lawful as a result of their misconduct during the strike. Ornamental filed exceptions to this decision. On June 15, 1989, the Board issued its decision and order, affirming the ALJ and adopting his recommended order as modified to clarify the employees' rights to reinstatement and back pay.
 
 
 11
 The Board found that Ornamental had violated the Act by discharging and failing to reinstate eleven strikers in reprisal and by failing to offer reinstatement to four other strikers who were placed on a preferential hiring list with no specific explanation. The Board found that strikers Currence, Buck, and Graham were lawfully discharged for engaging in misconduct during the strike.
 
 
 12
 On August 7, 1990, the Board filed with this Court the instant application for enforcement of its order.
 
 II.
 
 13
 In its briefs, Ornamental argues that it was proper for it to discharge all of the strikers for misconduct because some strikers engaged in inappropriate conduct. Ornamental argues that it should not have to determine the individual acts of employees. Because we previously have held to the contrary, Ornamental's argument fails.
 
 
 14
 The Act protects the right of employees to strike for the purpose of supporting their union's position in collective bargaining with their employer. NLRB v. Fleetwood Trailer Co., 389 U.S. 375, 378 (1967); 29 U.S.C. Sec. 158(a)(3), (1).[1] An employer who discharges such strikers presumptively violates the Act. Id.
 
 
 15
 Strikers who engage in egregious picket line misconduct, however, forfeit their right to reinstatement. Thus, an employer with an honest belief that strikers have engaged in such misconduct may discharge those strikers, but it must "produce evidence connecting the discharged employees to specific strike misconduct." Columbia Portland Cement Co. v. NLRB, 915 F.2d 253, 257 (6th Cir.1990). The employer must also prove that the decision to discharge particular employees was based on proven misconduct rather than mere allegations. See NLRB v. Champ Corp., 913 F.2d 639, 651-52 (9th Cir.1990).
 
 
 16
 Not every unlawful or violent act will deprive an employee of his or her right to reinstatement. Star Meat Co. v. NLRB, 640 F.2d 13, 14 (6th Cir.1980). The initial responsibility for determining whether specific conduct exceeds acceptable limits lies with the Board, whose determination should not be disturbed unless illogical or arbitrary. Id.; Columbia, 915 F.2d at 256. The Board's General Counsel may rebut the employer's honest belief that a striker engaged in serious misconduct by showing that the employee was actually innocent of the alleged misconduct. If General Counsel proves innocence, the employer violates the act by refusing to reinstate. Teledyne Indus., Inc. v. NLRB, 911 F.2d 1214, 1222. This burden of proof does not mean, however, that the employer is relieved of the burden first to connect a particular employee with misconduct, as Ornamental implicitly argues in its brief. We stated in Methodist Hosp. of Ky, Inc. v. NLRB, 619 F.2d 563 (6th Cir.), cert. denied, 449 U.S. 889 (1980), "the well settled rule in our circuit [is] that the vicarious imposition of sanctions for [strike] violence will not be enforced absent proof that a particular individual was engaged in the unprotected activity." Id. at 567.
 
 
 17
 Ornamental does not dispute the Board's finding that only three employees--Currence, Buck, and Graham--were linked to specific incidents of misconduct that were serious enough to warrant discharge. This failure to object to the Board's findings effectively waives Ornamental's right to object to those determinations. NLRB v. Valley Plaza, Inc., 715 F.2d 237, 240-41 (6th Cir.1983). We therefore will enforce the Board's order.
 
 
 18
 Even if Ornamental had contested the Board's finding, the record substantially supports the finding. Ornamental failed to assert any reason at all for discharging James Swope. Ornamental claimed it discharged Arnold Adams, Tim Delagrage, Richard Miller, Bill Stanley, and Bruce Walgenbach solely for blocking the plant entrance during the strike, but there was no evidence that these individuals blocked the entrance.
 
 
 19
 Ornamental provided evidence of specific occasions where Larry Norris, Henry Petz, and Rodney Ford momentarily blocked the entrance and requested the driver to respect the picket line. There is no evidence that their actions amounted to more than exercising the right to make nonthreatening appeals to those who are about to cross a picket line. See Tube Craft, Inc., 287 N.L.R.B. 491, 493 (1987).
 
 
 20
 Ornamental alleged Louis Domico mumbled to someone crossing the picket line, "[Y]ou'd better get out of here." Joint Appendix at 33 (Testimony of Adolf Kissner). The Board properly concluded that, even if made, the statement implied no action on his part and was too ambiguous to amount to misconduct. Ornamental asserts it discharged Larry Winkler for his altercation with Domingo, but the Board properly found that Domingo provoked the fight.
 
 
 21
 Thus, not only did Ornamental fail to contest the findings of the Board that none of the employees the Board ordered reinstated had been linked to incidents of misconduct, but the record substantially supports the Board's finding that Ornamental demonstrated no such links to misconduct.
 
 
 22
 For the first time in this litigation, Ornamental argued in its reply brief that it had subcontracted much of the work that had been done by the employees before the strike and that the resulting suspension of such work at its own facility provided a legitimate and substantial business justification for refusing reinstatement. At oral argument, Ornamental substantially conceded that the strikers were not properly dismissed for misconduct and instead argued its new claim that it had a business justification for refusing to rehire the employees. In the exceptions to the ALJ's decision that Ornamental filed with the Board, however, it stated that it never relied on subcontracting at its facility as a defense of the discharge. Joint Appendix at 117. This argument is not properly before us because we do not consider objections that have not been raised before the Board unless failure to urge the objection is excused because of extraordinary circumstances. 29 U.S.C. Sec. 160(e); See also NLRB v. Innkeepers of Ohio, Inc., 596 F.2d 177, 178 (6th Cir.1979). Extraordinary circumstances have neither been alleged nor demonstrated, so this argument is not properly before us.
 
 III.
 
 23
 For the foregoing reasons, we ENFORCE the Board's June 15, 1989, Decision and Order, 295 N.L.R.B. No. 53 (1989).
 
 
 
 *
 The Honorable Avern Cohn, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 The Act states in pertinent part:
 (a) It shall be an unfair labor practice for an employer--
 (1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title;
 * * *
 (3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization....