**DAVID R. WEBB COMPANY, INCORPORATED, Petitioner, Cross–Respondent,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent, Cross–Petitioner.**

Nos. 88–3204 & 88–3344.

United States Court of Appeals, Seventh Circuit.

Argued June 16, 1989.

Decided Oct. 30, 1989.

Rehearing and Rehearing In Banc Denied Dec. 7, 1989.

Aileen A. Armstrong, Paul J. Spielberg, N.L.R.B., Appellate Court—Enforcement Litigation, Washington, D.C., William T. Little, N.L.R.B., Indianapolis, Ind., for N.L. R.B.

Jack H. Rogers, Barnes & Thornburg, Indianapolis, Ind., for David R. Webb Co., Inc.

Before POSNER, RIPPLE and MANION, Circuit Judges.

MANION, Circuit Judge.

David R. Webb Company (Webb) petitions for review of an order of the National Labor Relations Board (NLRB or the Board), in which the Board found that Webb violated Sections 8(a)(1) and (3) of the Labor–Management Relations Act (the Act), 29 U.S.C. §§ 158(a)(1) and (3), by failing to reinstate three striking employees to their pre-strike positions or the substantial equivalent of those positions. The NLRB filed a cross-application for enforcement of this order.[1] For the reasons stated below, we enforce the NLRB order.

## I.

On July 28, 1986, 246 of Webb's 260 production and maintenance employees began an economic strike. On November 3, 1986, the striking employees unconditionally offered to return to work. By then, the positions of the three employees involved in this case had been filled by permanent replacements, and therefore the employees were placed on a preferential recall list, arranged according to qualifications and seniority.[2]

By February, these three employees had reached the top three slots on the recall list. Webb offered Alice Hill an entry level position as a "dryer-feeder."[3] She accepted the job but performed poorly, and Webb terminated her after one day. Rex Young replaced Hill, but he lasted two days and was terminated. Eugene McGaha followed Young and two days later Webb terminated him as well. There is little dispute that the three employees failed to perform satisfactorily as dryer-feeders. Webb, however, did not return any of the three to the recall list.

The Regional Director for Region 25 of the NLRB issued a complaint against Webb, claiming it had engaged in unfair labor practices in violation of Sections 8(a)(1) and (3) of the Act[4] by rehiring workers for positions that were not the substantial equivalent of their pre-strike positions, and then terminating them not only from that position but also from their right to recall to their original positions, or the substantial equivalent of those positions. The Board relied on *Laidlaw Corp. v. NLRB*, 414 F.2d 99 (7th Cir.1969), *cert. denied*, 397 U.S. 920, 90 S.Ct. 928, 25 L.Ed.2d 100 (1970), for the proposition that employers violate Sections 8(a)(1) and (3) of the Act by failing to reinstate striking employees to their former or substantially equivalent positions (as they became available) after the employees have unconditionally offered to return to work following an economic strike.

Webb argued before the ALJ, as it argues on appeal, that *Laidlaw* does not require an employer to reinstate an employee to a position substantially equivalent to his pre-strike position; rather, Webb argues that any rights the employees had as economic strikers were abrogated upon ac-

---

1. We consolidated the petition and cross-appeal on December 7, 1988.

2. The validity of the recall list has at no time been an issue in this action.

3. Dryer-feeders are required to load pieces of wood veneer onto a lift, and then raise or lower the lift and flip the veneer upward into a vacuum pump which sends the veneer on to a belt and then into a dryer. This was a lower level position than any of the three employees had held before the strike. Prior to the strike, Alice

Hill held a position as a labeler in the clipping and measuring department, Rex Young was a flitch cleaner and handler, and Eugene McGaha was a truck driver, fork-lift operator and storeroom clerk.

4. Section 8(a)(1) prohibits employers from interfering with employees' rights of self-organization, concerted action, and collective bargaining, and Section 8(a)(3) prohibits discrimination in employment that encourages or discourages membership in any labor organization.

ceptance of the lower-level dryer-feeder position. Webb contends that a striker who accepts a job other than his pre-strike position forfeits his right to future recall to that position if he is unable to perform the job he accepts and is terminated from that position. Alternatively, Webb argues that even if the employees have such a right under *Laidlaw*, Webb had offered a legitimate and substantial business justification for not reinstating these three employees to their former or substantially equivalent positions.

## II.

The ALJ held that the termination of the employees from the lower-level position and the simultaneous termination of their preferential recall rights violated Sections 8(a)(1) and (3) because Webb failed to offer a legitimate and substantial business justification for its failure to satisfy the employees' *Laidlaw* reinstatement rights. The ALJ held that those reinstatement rights included the right to eventually be recalled to their pre-strike positions or one substantially equivalent, without any impairment to the employees' previous seniority rights and other benefits. Because the pre-strike positions of two of the employees (Hill and Young) became vacant after their termination from the dryer-feeder position, the ALJ ordered Webb to reinstate the employees to their pre-strike positions. The ALJ ordered Webb to reinstate the third employee (McGaha) to his pre-strike truck driver position, if available, or to a substantially equivalent position if the truck driver position was still held by the permanent replacement who filled the position during the strike. The ALJ also ordered Webb to make the three employees whole for any loss of pay from the date they should have been reinstated to their original positions, or in McGaha's case, to a substantially equivalent position.

Webb filed exceptions to the ALJ's decision with the NLRB. After reviewing the ALJ's opinion, the NLRB issued an order adopting the ALJ's rulings, findings and conclusions. That order, however, clarified the ALJ's decision by emphasizing that be-

cause of the poor performance of the three employees in the dryer-feeder position, Webb was not required to retain them in that position; but because that position was not substantially equivalent to the employees' pre-strike positions, Webb failed to offer reinstatement sufficient to satisfy its obligations under *Laidlaw.*

## III.

The narrowness of our review of NLRB decisions is well-established in this circuit.

> We will defer to the Board's judgment and the Board's factual findings shall be conclusive if supported by substantial evidence on the record considered as a whole. 29 U.S.C. § 160(e).... This "court may not substitute its judgment for that of the Board when the choice is 'between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it *de novo.*'" ... We shall also defer to the Board's inferences in areas where the Board is considered to have 'specialized experience and expertise.'

*NLRB v. Emsing*, 872 F.2d 1279, 1283–84 (7th Cir.1989) (citations omitted). This court must uphold the legal conclusions of the Board "unless they are irrational or inconsistent with the [Act]." *NLRB v. Parents and Friends of the Specialized Living Center*, 879 F.2d 1442, 1448 (7th Cir.1989) (citing *NLRB v. Financial Institution Employees*, 475 U.S. 192, 202, 106 S.Ct. 1007, 1012, 89 L.Ed.2d 151 (1986)). In conducting this review, however, we must look at the record in its entirety. *Emsing*, 872 F.2d at 1283; *NLRB v. Stor–Rite Metal Products, Inc.*, 856 F.2d 957, 964 (7th Cir.1988). After reviewing the record in this light, we conclude that the ALJ's relevant factual findings, as adopted by the NLRB, are supported by substantial evidence, and affirm those findings. We now review the ALJ's legal conclusions.

## A.

Section 152(3) of Title 29 states that persons considered "employees" entitled to the protections of the Act include any indi-

vidual "whose work has ceased as a consequence of, or in connection with, any current labor dispute ... and who has not obtained any other regular and substantially equivalent employment."[5] Based on this provision, the Supreme Court held in *NLRB v. Fleetwood Trailer Co.*, 389 U.S. 375, 381, 88 S.Ct. 543, 547, 19 L.Ed.2d 614 (1967), that after a striker has made an unconditional offer to return to work, he is entitled to an offer of reinstatement "[i]f and when a job for which the striker is qualified becomes available." The court reasoned that if "after conclusion of the strike, the employer refuses to reinstate striking employees, the effect is to discourage employees from exercising their rights to organize and strike guaranteed by §§ 7 and 13 of the Act." *Id.* at 378, 88 S.Ct. at 546.

Our first major application of the *Fleetwood Trailer* holding came in *Laidlaw*, 414 F.2d 99. In that case, we upheld an NLRB order which decided that an employer violated §§ 8(a)(1) and (3) by refusing to reinstate a striker after his permanent replacement left unless he agreed to give up his seniority and vacation rights, and by terminating strikers whose jobs were not available on the day they applied to return to work. We held that a striking employee has a right to full reinstatement, and this right cannot be conditioned on job availability on the day the employee unconditionally offers to return to work; an employer is thus obligated to offer reinstatement to the striking employee before hiring applicants who do not have the striking employee's continuing "employee" status under the Act. *Laidlaw*, 414 F.2d at 103.

Neither the Supreme Court in *Fleetwood Trailer* nor this court in *Laidlaw* defined the parameters of what action by an employer will constitute adequate reinstatement. Neither case discussed whether reinstating an employee to a different job with the company fulfilled the company's reinstatement obligation. Nor did the cases focus on whether the "substantially

equivalent" language in § 152(3) referred only to jobs at another company or whether offering a substantially equivalent job at the reinstating company met the company's obligation. A few circuits, however, have begun the process of establishing guidelines for reviewing the adequacy of the reinstatements of striking employees. In *Arlington Hotel Co. v. NLRB*, 785 F.2d 249, 251 (8th Cir.), *cert. denied*, 479 U.S. 914, 107 S.Ct. 314, 93 L.Ed.2d 288 (1986), the Eighth Circuit held that under the circumstances of that case (where employees had been cross-trained for other positions) if a position is open for which the striker is qualified, but which is not the substantial equivalent of the employee's former position, the company must offer the job to the employee rather than restrict its reinstatement offer to the employee's former position. *See also NLRB v. American Olean Tile, Co.*, 826 F.2d 1496, 1501 (6th Cir.1987) (an employer is required to offer strikers available positions for which they are qualified even if such positions are not substantially equivalent to their pre-strike positions).

The Eighth and Ninth Circuits have specifically stated that employees must be reinstated to their prior or substantially equivalent positions before an employer's obligation is satisfied. *NLRB v. Rockwood & Co.*, 834 F.2d 837, 841–42 (9th Cir.1987) ("because the glue tank cleaning job was not substantially equivalent to [the employee's] former position, he was entitled to accept or reject it without affecting his status as an employee under section 152(3) or his right to reinstatement"); *Medallion Kitchens, Inc. v. NLRB*, 811 F.2d 456, 459 (8th Cir.1987) ("[a]bsent a substantial and legitimate business justification, an employer's obligation is satisfied only upon an offer to the former striker of a substantially equivalent job"). Other Circuits have given similarly broad interpretations to the reinstatement requirement. The Sixth Circuit has held that the positions of economic

---

5. As stated above, Webb's argument is that the three individuals here were no longer "employees" within the protection of the Act, as it applies to the *Laidlaw* rights of striking employees, once they accepted the dryer-feeder position. In Webb's view, their failure to perform in that position justified their termination with no residual striker's rights.

strikers may be filled by permanent replacements during the strike, but the strikers "retain the right to reinstatement in their jobs as soon as those jobs become available." *Kurz–Kasch, Inc. v. NLRB*, 865 F.2d 757, 759 (6th Cir.1989). The Third Circuit has held that "[s]triking employees retain their status as employees and must be fully reinstated when a strike ends." *Hajoca Corp. v. NLRB*, 872 F.2d 1169, 1177 (3d Cir.1989) (emphasis added) (citations omitted).

The question before us is whether, in order to fulfill its *Laidlaw* obligation, Webb must offer an economic striker the same job, a *substantially equivalent* job, or any job for which he or she is qualified. The ALJ and the Board determined that the recall job had to be substantially equivalent, if not the same as, the employee's pre-strike position. Webb argues that the "substantially equivalent" language in § 152(3) refers only to employment obtained elsewhere during the strike. The NLRB, in contrast, cites language from *Medallion Kitchens* that "an employer's obligation is satisfied only upon an offer to the former striker of a *substantially equivalent* job." 811 F.2d at 459 (emphasis added).

We are particularly deferential to the NLRB when interpreting the Labor Acts. When the Board's decision rests upon an interpretation of the Act, we will uphold the decision if it 'is an acceptable reading of the statutory language and a reasonable implementation of the purposes of the relevant statutory sections.'

*Giddings & Lewis, Inc. v. NLRB*, 675 F.2d 926, 928–29 (7th Cir.1982) (citations omitted); *see also NLRB v. Transportation Management Corp.*, 462 U.S. 393, 402–03, 103 S.Ct. 2469, 2474–75, 76 L.Ed.2d 667 (1983).

The NLRB has consistently taken the position that employers must reinstate striking employees to their former or substantially equivalent positions before the employer's *Laidlaw* obligations are satisfied. In *Providence Medical Center*, 243 NLRB 714, 744 (1979), the NLRB enforced an ALJ holding that an employer must "immediately" reinstate a striking employee to his previous or a substantially equivalent position as soon as such a position becomes available, and that the striker's acceptance of an interim lower-level position does not "extinguish" the employer's duty to offer substantially equivalent employment when it later becomes available. Recently, in *Ford Bros., Inc.*, 294 NLRB No. 10, at 7 (May 23, 1989), the NLRB ordered an employer to

[i]mmediately reinstate all employees who were engaged in an economic strike against the Respondent ... to their former positions, or if those positions no longer exist, to substantially equivalent positions, without prejudice to their seniority or privileges previously enjoyed, and make those employees whole for any loss of wages or benefits that they sustained....

This order was based on the ALJ's interpretation of the Act and the case law as placing the burden on the employer "of proving that the strikers' former positions or substantially equivalent positions, were unavailable for legitimate and substantial business reasons." *Id.* at 51 of ALJ Decision.

Although the application of the "substantially equivalent" language may have expanded somewhat in the evolutionary process of the case law, such an application is not unreasonable. We therefore conclude that the NLRB's interpretation of the Act, *Fleetwood Trailer*, and *Laidlaw*, which requires reinstatement of a striking employee to his former or a substantially equivalent position, is consistent with the policies and the language of the Act, and with the case law thus far.[6]

---

**6.** This holding is consistent with the approach of the Ninth Circuit in *NLRB v. Rockwood & Co.*, 834 F.2d 837, 841–42 (9th Cir.1987) and the Eighth Circuit in *Medallion Kitchens, Inc. v. NLRB*, 811 F.2d 456, 459 (8th Cir.1987). *See also Rockwood & Co.*, 281 NLRB 862, 877 (1986)

("a former economic striker is entitled to wait for reinstatement to a position 'substantially equivalent' to his prestrike position and ... an employer violates Section 8(a)(3) and (1) of the Act by terminating such an individual's employment status, thereby ending his preferential re-

Requiring employers to reinstate striking employees to the same position they held before the strike, or a substantially equivalent position, is consistent with the policies underlying the Act. One of the policies behind the Act was to protect the rights of the employees to organize and strike. *See, e.g., Fleetwood Trailer,* 389 U.S. at 378, 88 S.Ct. at 545. Since "[t]he term 'employee' must be understood with reference to the purpose of the Act and the facts involved in the economic relationship," *Woodlawn Hospital v. NLRB,* 596 F.2d 1330, 1334 (7th Cir.1979), we need to discern who is an employee entitled to protection under *Laidlaw* by determining whether excluding employees from the Act's protection would discourage labor from organizing and striking. We agree with the NLRB that employees will be deterred from striking if their employer can reinstate them to a lower-level position and thereby fulfill his obligations under *Laidlaw.* If lower-level positions are all that are available to an employee when he reaches the top of the recall list, he is likely to feel financial pressure (particularly after a long strike where most vacancies were filled) to take the position rather than wait until a position substantially equivalent to his pre-strike job becomes available. However, if accepting a lesser job means he may lose his right to reinstatement to his previous position if he is unable to perform satisfactorily, his options are limited. To ensure that the striker is not penalized for engaging in protected activity, we conclude that under the policies behind the Act, the process of reinstatement does not end until the employee receives his original position or one sub-stantially equivalent to it. But the right to return is not necessarily open-ended. The Board will ultimately have to determine the obligations of the employer and the rights of the employee while waiting for a vacancy in a substantially equivalent job.[7]

The theory behind *Fleetwood Trailer* and *Laidlaw* is that employees should not be penalized for striking, and that they remain employees regardless of such action. This logically extends to the employees' post-strike employment status, and protects the employees until they are sufficiently reinstated. *See Fleetwood Trailer,* 389 U.S. at 379, 88 S.Ct. at 546; *see also id.* at 381, 88 S.Ct. at 547 (Court holds that "the status of the striker as an employee continues until he has obtained 'other regular and substantially equivalent employment' "). "This basic right to jobs cannot depend upon job availability as of the moment when the applications are filed." *Id.* at 381, 88 S.Ct. at 547. Likewise, a returning striker's right should not depend on the coincidence of which jobs may be open when he reaches the top of the recall list. If Webb had an opening in the employees' pre-strike jobs, or in substantially equivalent positions, when it placed the employees in the dryer-feeder position (or indeed any time before the employees were terminated from the dryer-feeder position), it would have had to offer them that position. Webb cannot now argue that because the employees chose to take the lower-level position that the company is discharged from the higher reinstatement requirement.

*Laidlaw* supports this interpretation. There, we held that strikers who are re-

---

instatement rights, for having refused an offer of a job that is not substantially equivalent"), *enforced,* 834 F.2d 837 (9th Cir.1987); *Harvey Engineering & Manufacturing Corp.,* 270 NLRB 1290, 1292 (1984) ("[a]n employer is obligated to accord economic strikers preferential status and to immediately reinstate them on application when their previous or substantially equivalent positions become available"); *H & F Binch Co.,* 188 NLRB 720, 725 (1971) *Laidlaw* requires that the employer eventually offer striking employees "their old jobs or substantially equivalent ones," even where the employee has already accepted a lower paying position from the employer), *enforced,* 456 F.2d 357 (2d Cir.1972).

7. The Act is also concerned with the rights of the employer to run his business, and attempts to balance the respective rights of employers and employees. Webb argues that the NLRB order here interferes with his ability to discharge employees who are performing unsatisfactorily, a right we readily concede belongs to employers. We have previously recognized the "Congressional intent to preserve an employer's right to discipline conduct not protected by the Act." *Woodlawn Hospital,* 596 F.2d at 1335. As discussed above, however, we do not question Webb's act of discharging the employees from the dryer-feeder position.

placed by permanent employees "are entitled to *full* reinstatement upon departure of the replacements unless they have in the meantime acquired regular and substantially equivalent employment." 414 F.2d at 103 (emphasis added). Allowing the employee to retain his right to reinstatement until he receives substantially equivalent employment from another employer [8] is justified because his original employer should be held accountable until the employee is in a situation comparable to the one he was in before he exercised his right to strike; this certainly applies to the type of employment he should receive from his own employer as well.

Webb cites three cases which it claims are inconsistent with the NLRB's interpretation of the reinstatement requirement. The first is *Woodlawn Hospital*, 596 F.2d at 1330, where this circuit, in addressing the issue of who is an employee under the Act, stated that "strikers properly discharged for unprotected activity were not 'employees'," because their employment did not "cease in connection with a labor dispute" as required by 29 U.S.C. § 152(3), and therefore the Board could not order their reinstatement. *Id.* at 1335. In *Woodlawn Hospital*, we addressed an NLRB order of reinstatement to a position from which the employee was discharged. Here we are not questioning whether Webb validly discharged the three employees from the dryer-feeder position for incompetent performance. Rather, we are concerned with whether the employees were fully reinstated in the first place. When the employees accepted the lesser job of dryer-feeder, Webb removed them from the recall list and the possibility of reinstatement to their former or a substantially equivalent position. We conclude under these facts that such removal from the recall list violates the Act. The employees should maintain their "employee" status in relation to those positions, even though they were incompetent dryer-feeders.

Our holding does not immunize employees from discipline who are reinstated to positions not the substantial equivalent of their pre-strike positions. The only right they maintain that is not also held by newly hired employees in the same position is the right to eventually be reinstated to their former position or its substantial equivalent. Also, once the employees are fully reinstated to their former or substantially equivalent positions, Webb is not prevented from completely discharging them from those positions for their inability to perform the job or for other reasons constituting cause.

Webb complains that the NLRB order is inconsistent with the Eighth Circuit's decision in *Arlington Hotel*, 785 F.2d 249, where the court held that an employer (a hotel) who had a policy of cross-training its employees for several jobs, must offer a striking employee any available job for which he is qualified, rather than wait until his former or a substantially equivalent position becomes available. Without determining the scope of *Fleetwood Trailer*, the *Arlington Hotel* court held:

> Under the facts of this case, we find that the Board did not err in holding that the Hotel discriminated against the strikers by not offering them jobs for which they were qualified. The Hotel had a policy of cross-training and developing multiple capabilities for its employees.

785 F.2d at 251. Thus, since the cross-training policy qualified the employees for many jobs, they had a right to be reinstated to whichever of those openings first became available. While *Arlington Hotel* may be a starting point for determining the scope of protection for employees' *Laidlaw* rights, it certainly does not encompass the full extent of the employer's *Laidlaw* obligations.

Webb finally relies on *American Olean Tile*, 826 F.2d 1496, which involved a dispute over the order of recall for two plants which were struck by their employees. The Sixth Circuit there held that striking employees are considered reinstated upon

---

**8.** Webb seems to concede that if the three employees had gone to a dryer-feeder position at another company and were terminated for cause, Webb would be required to recall them under *Laidlaw*.

their return to the company, even when the reinstatement is to a position that is not the substantial equivalent of the pre-strike position, and that their later transfer to their former or substantially similar jobs merely "completed the process." *Id.* at 1501. However, the court made that statement in a very different context than the one before us now; there, employees who were "reinstated" to positions not substantially equivalent to their pre-strike positions were being compared to those still on the recall list to determine who should fill vacancies that subsequently arose. The employees placed in the lower-level positions were "reinstated" in relation to those still on the recall list, but the court recognized that these reinstated employees had not yet received the substantially equivalent positions to which they were entitled. Thus, the Sixth Circuit's holding does not suggest that the employer could terminate the employees' right to eventually receive their former or substantially equivalent positions if they proved unable to perform the positions to which they were initially reinstated.[9]

Moreover, Webb's position that its recall obligation is fulfilled once a striker accepts any job for which he is qualified places economic strikers in a potentially job-fatal situation. Allowing the employer to satisfy its *Laidlaw* obligation by offering a striker a position which is not one the striker is best able to perform (in contrast to his prestrike position) could allow a system which forces the striker to accept a position at which he is predestined to fail and thus lose his original *Laidlaw* rights in the process. This is the type of situation against which the Act was designed to protect striking employees, since returning from a strike to such a precarious situation adversely affects the employee's right to strike and organize in the first place.

We uphold the NLRB's determination that an employee retains his right to rein-

statement until he receives the same job or one substantially equivalent to it (assuming he does not accept a substantially equivalent job elsewhere) even if in the interim he accepts a lesser or different position from his employer. But as we stated earlier, we do not perceive this right to be open-ended. Additional factual variations will present related questions. At some point the Board will need to decide whether an employer must more than once offer a striking employee an available lesser position pending the opening of a substantially equivalent job. The employee's position on the recall list will also be a factor. Although these extended questions are a concern to both the employer and employee, they are not specifically before us now, and until the NLRB has had an opportunity to rule on these issues, we need not take a definitive position.

### B.

■ Having held that striking employees must be reinstated to their former or a substantially equivalent position, we can only refuse enforcement of the NLRB order if Webb shows a legitimate and substantial business justification for removing the employees from the recall list and refusing to place them in their former or substantially equivalent positions when such became available. *Fleetwood Trailer,* 389 U.S. at 378, 88 S.Ct. at 545. As the Supreme Court stated in *Fleetwood Trailer,*

> unless the employer who refuses to reinstate strikers can show that his action was due to 'legitimate and substantial business justifications,' he is guilty of unfair labor practices.... It is the primary responsibility of the Board and not of the courts 'to strike the proper balance between the asserted business justifications and the invasion of employee rights in light of the Act and its policy.'

**9.** The court in *American Olean Tile* also stated that an *offer* of a position for which the striking employee is qualified, even if that position is not the substantial equivalent of the employee's prestrike position, satisfies the employer's obligations under *Laidlaw*. Webb expressly refused

to argue such a position to this court, and our holding that the actual acceptance of such an offer does not abort the employee's *Laidlaw* rights obviously rejects a mere offer as being sufficient.

*Id.* (citations omitted).[10] The burden of establishing this justification is on the employer. *Id.; Kurz–Kasch,* 865 F.2d at 759. We find that Webb has failed to meet this burden.

Webb argues that it has a legitimate reason for terminating employees from positions they are unable to perform. We do not take issue with that proposition. The failure to adequately perform the dryer-feeder job was cause for termination from that position, as the NLRB stated. However, it was not a sufficient reason for removing the employees from the eligibility list for their prestrike positions or their substantial equivalent.

Webb also argues that it has a legitimate business reason for subjecting the striking employees to the same disciplinary standards as newly hired workers. Again, nothing in our holding suggests that the three employees here could not be disciplined or dismissed from the dryer-feeder position for the same reasons other newly hired employees could be similarly disciplined. However, because the three employees here possessed residual *Laidlaw* rights to full reinstatement, Webb could not refuse to offer them their pre-strike positions or their substantial equivalent when such vacancies arose. In sum, since all of Webb's arguments address its reasons for terminating the employees from the dryer-feeder position, and not reasons for terminating them from the recall list and their full reinstatement rights, we do not believe it has offered a valid defense of a legitimate and substantial business justification for its actions.

Webb also focuses on the ALJ's finding that it exhibited no anti-union animus. But such a finding is only relevant if the employer has already shown a legitimate and substantial business justification; there can be a violation of the Act by an employer's action that is destructive to the rights of the striking employee even if the em-

ployer does not possess anti-union sentiment. *Fleetwood Trailer,* 389 U.S. at 380, 88 S.Ct. at 546; *Kurz–Kasch,* 865 F.2d at 759; *Woodlawn Hospital,* 596 F.2d at 1333.

> [P]roof of antiunion motivation is unnecessary when the employer's conduct 'could have adversely affected employee rights to *some* extent' and when the employer does not meet his burden of establishing 'that it was motivated by legitimate objectives.'

*Fleetwood Trailer,* 389 U.S. at 380, 88 S.Ct. at 547 (quoting *NLRB v. Great Dane Trailers,* 388 U.S. 26, 34, 87 S.Ct. 1792, 1797, 18 L.Ed.2d 1027 (1967)). The Court went on to hold that an employer's refusal to reinstate striking employees is "destructive of important employee rights," and that where the employer "has not shown 'legitimate and substantial business justifications,' the conduct constitutes an unfair labor practice without reference to intent." *Id.* 389 U.S. at 380, 88 S.Ct. at 547. Because Webb has refused to reinstate the three striking employees, and because we, like the ALJ, have found that it has not offered a legitimate and substantial business reason for this refusal, the ALJ need not have found any anti-union sentiments by Webb to find a violation of the Act.

### C.

The record below shows that Hill's pre-strike position as a labeler and Young's pre-strike position as a flitch cleaner became vacant after each was terminated from the dryer-feeder position, and that these positions were subsequently filled by employees with less seniority than either Hill or Young. The NLRB's order therefore properly directed that these two employees be reinstated to their pre-strike positions. As for McGaha, the ALJ found, and this finding is not contradicted by the record, that the permanent replacement in McGaha's pre-strike truck driver/fork-lift

---

**10.** The Court gave two examples of possible legitimate and substantial business justifications for an employer's refusal to reinstate a striking employee: (1) permanent employees were hired during the strike to continue normal business operations, and these employees remain in the positions at issue, and (2) the striker's job was eliminated for substantial and bona fide reasons. *Fleetwood Trailer,* 389 U.S. at 379, 88 S.Ct. at 546. Neither justification is present here.

operator job remained in that position at the time of the administrative hearing, but that there was evidence that other fork-lift operator and related positions became available and were filled by employees with less seniority than McGaha. Under the NLRB's order, if McGaha's original position has in the meantime opened up, then Webb must reinstate McGaha to that position. If the position remains filled by the permanent replacement, Webb must reinstate McGaha to a substantially equivalent position, which the record suggests may exist. If for some reason no substantially equivalent position had become available since McGaha's acceptance of the dryer-feeder position, he is entitled to be placed back on the recall list until such a vacancy arises. The failure of the ALJ to definitively find that a position substantially equivalent to McGaha's pre-strike position had become available at Webb, and our lack of knowledge as to whether McGaha's former position or a substantially equivalent position has become available since the ALJ's decision, does not prevent us from enforcing the Board's order. This is an issue that can easily be decided by the Board or the ALJ at a later compliance proceeding. *See NLRB v. Sure-Tan, Inc.*, 672 F.2d 592, 602 (7th Cir.1982) (enforcing NLRB decision which left for the compliance proceeding the determination as to the availability of work).[11]

### D.

Finally, we hold that enforcing the Board's order of reinstatement does not violate 29 U.S.C. § 160(c). That section provides that when the Board finds an employer has engaged in an unfair labor practice, the Board shall "take such affirmative action including reinstatement of employees with or without back pay, as will effectuate the policies of this subchapter." As previously noted by this court, "the Board is given substantial discretion in the reinstatement of 'employees'." *Woodlawn*

*Hospital*, 596 F.2d at 1335. Section 160(c) goes on to state, however, that

> [n]o order of the Board shall require the reinstatement of any individual as an employee who has been suspended or discharged, or the payment to him of any back pay, if such individual was suspended or discharged for cause.

We read this statute as prohibiting the Board from ordering employees reinstated to the positions from which they were discharged. Webb's argument that Section 160(c) bars reinstatement here is based on its mistaken assumption that the three employees had been sufficiently reinstated at the time of their discharge from the dryer-feeder position, and that they had lost their status as "employees" under the Act. It is true that once the employees are fully reinstated to their former or substantially equivalent positions, Webb has the right to discharge them for any legal reason. *See, e.g., Golden State Bottling Co. v. NLRB*, 414 U.S. 168, 189 n. 10, 94 S.Ct. 414, 427 n. 10, 38 L.Ed.2d 388 (1973). The NLRB's order in this case, however, directs reinstatement to the employees' pre-strike positions or the substantial equivalent of those positions, and these are positions for which the employees' inability to perform in the lower-level positions is not related. It was not the discharge from the dryer-feeder position that constituted the unfair labor practice, but rather the termination of the employees' *Laidlaw* rights by removing them from the recall list and refusing to reinstate them to their former or substantially equivalent positions. Had the Board ordered reinstatement to the dryer-feeder position, § 160(c) would effectively prohibit such reinstatement. Because Webb did not have "cause" to terminate the three employees from the recall list and their right to eventual reinstatement to their pre-strike position or its substantial equivalent, the Board can order reinstatement as a remedy for that violation of Sections 8(a)(1) and (3). *Woodlawn Hospital*, 596 F.2d at

---

**11.** Similarly, we need not define here what would constitute a substantially equivalent position to McGaha's pre-strike position, since that is the type of issue best suited for first determination by the ALJ and the NLRB, with their expertise in this area and their ability to develop a sufficient factual record to make such a determination. Moreover, there are many potential scenarios in this and future cases that we need not address in this case.

1344 (recognizing that where the Board properly finds a violation of the Act, it can order reinstatement under its remedial powers granted by § 160(c), although finding no violation of the Act here).

IV.

In sum, we uphold the determination of the ALJ and the NLRB that Webb violated Sections 8(a)(1) and (3) of the Act by terminating the three employees from the recall list before offering them reinstatement to their pre-strike or substantially equivalent positions, and failing to offer a legitimate and substantial business reason for such termination. The petition for review of the NLRB order is denied, and the NLRB's cross-application for enforcement of the order is granted.

ENFORCEMENT GRANTED.