8 F.3d 27
 148 L.R.R.M. (BNA) 2128
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE
WORKERS, AERONAUTICAL Mechanics Lodge No. 685,
AFL-CIO; Raymond Clifton McGee, Petitioners,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent,
Solar Turbines Incorporated, Respondent-Intervenor.
 No. 92-70157.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Sept. 1, 1993.
Decided Sept. 24, 1993.
 
 1
 Before BRUNETTI, KOZINSKI and BOGGS,* Circuit Judges.
 
 
 2
 MEMORANDUM**
 
 
 3
 On July 13, 1987, the International Association of Machinists and Aerospace Workers ("the Union") began an economic strike against Solar Turbines Incorporated ("Solar") following the expiration of the parties' collective bargaining agreement. On July 31, Solar wrote to the strikers, advising them that they would be permanently replaced if they failed to return to work by August 10. On August 8, 9 and 10, Solar ran newspaper advertisements seeking applicants for permanent positions.
 
 
 4
 On August 12, Solar interviewed applicants for the strikers' positions and hired 52 of them. Solar told those who received offers that they would be hired on a permanent basis and would not lose their positions should the strikers seek reinstatement. The 52 offerees who accepted that day received various documents regarding their employment with Solar. These documents included an "Employment Declaration and Agreement," company code of conduct, and copies of company policies regarding attendance and supply of tools. At the same time, Solar assigned to the new hires their report-to-work dates, job classifications, department and shift assignments, rates of pay, and employee badge numbers. New hires also signed consent forms for substance-abuse testing and received appointment dates for drug and alcohol tests and physical exams.
 
 
 5
 A number of new hires expressed concern and received assurances with respect to the permanency of these positions. Twenty-two of the 52 replacements quit other jobs (in several cases prior to even taking the substance abuse test and physical exam) to accept employment with Solar.
 
 
 6
 On August 15 the Union, on behalf of the strikers, conveyed their unconditional offer to return to work and the employer refused the offer on the basis that the workers had been permanently replaced.
 
 
 7
 The Union, on behalf of the strikers, subsequently filed a complaint with the National Labor Relations Board (NLRB) claiming that Solar had engaged in unfair labor practices in violation of 29 U.S.C. § 158(a)(1) and (3) by failing to reinstate 52 strikers after they had unconditionally offered to return to work. The ALJ concluded that the 13 replacements "who underwent physical examination and drug/alcohol testing before the Union's return offer had effectively removed the contingencies attached to their hire, thus becoming lawful permanent replacements," while the 39 who had yet to undergo testing had thus not attained permanent status by the time the strikers offered to return.
 
 
 8
 On appeal, the NLRB modified the decision of the ALJ, finding that all 52 new hires became permanent replacements as of August 12. The NLRB held that contingencies with respect to substance abuse testing and physical exams did not affect Solar's "clear commitment" to employ the replacement workers on a permanent basis. Solar Turbines Inc. v. Int'l Assoc. of Machinists & Aerospace Workers, 302 NLRB No. 3, at 5. The Union appeals.
 
 
 9
 We affirm the NLRB's ruling, finding that its determination that the new hires at Solar were "permanent replacements" was supported by substantial evidence and that the Board correctly applied the governing law.
 
 
 10
 This court must uphold a decision of the NLRB "if its factual findings are supported by substantial evidence and if it has correctly applied the law." N.L.R.B. v. Champ Corp., 933 F.2d 688, 691 (9th Cir.1990), cert. denied, 112 S.Ct. 416 (1991); see also 29 U.S.C. § 160(e) (1988) (NLRB findings of fact "if supported by substantial evidence on the record considered as a whole shall be conclusive.").
 
 
 11
 The National Labor Relations Act ("NLRA"), as amended, 29 U.S.C. § 151 et seq. (1988), governs the reinstatement of striking workers. In NLRB v. Fleetwood Trailer Co., Inc., 389 U.S. 375, 378 (1967), the Supreme Court interpreted the NLRA, holding that:
 
 
 12
 unless the employer who refuses to reinstate strikers can show that his action was due to 'legitimate and substantial business justifications,' he is guilty of an unfair labor practice. The burden of proving justification is on the employer.
 
 
 13
 Id. (citation omitted).
 
 
 14
 One recognized "legitimate and substantial" business justification for refusing to reinstate economic strikers is "when the jobs claimed by the strikers are occupied by workers hired as permanent replacements during the strike in order to continue operations." Fleetwood Trailer, 389 U.S. at 379. The Supreme Court has defined "permanent" in this context to mean "hired in a manner that would show that the men [and women] who replaced the strikers were regarded by themselves and the [employer] as having received their jobs on a permanent basis." Belknap v. Hale, 463 U.S. 491, 501 (1983) (citation omitted).
 
 
 15
 The NLRB correctly applied the law and substantial evidence supports its determination that before the strikers offered to return, the replacements accepted job offers under circumstances showing that they and their new employer regarded the jobs as permanent.
 
 
 16
 AFFIRMED.
 
 
 
 *
 Honorable Danny J. Boggs, United States Circuit Judge for the Sixth Circuit, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Circuit Rule 36-3