**NOT FOR PUBLICATION**
UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

**FILED**

OCT 28 2025

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| NATIONAL LABOR RELATIONS BOARD, <br><br> Petitioner, <br><br> v. <br><br> TRACY AUTO, L.P. d/b/a TRACY TOYOTA, <br><br> Respondent. | No. 23-1689 <br><br> NLRB Nos. 32–CA–260614 and 32–CA–262291 <br><br> MEMORANDUM* |
| TRACY AUTO, L.P. d/b/a TRACY TOYOTA, <br><br> Petitioner, <br><br> v. <br><br> NATIONAL LABOR RELATIONS BOARD, <br><br> Respondent. | No. 23-1711 <br><br> NLRB Nos. 32–CA–260614, 32–CA–262291, and 32–RC–260453 <br><br> MEMORANDUM* |

---

 * This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

On Petition for Review of an Order of the
National Labor Relations Board

Argued and Submitted August 23, 2024
Submission Vacated August 26, 2024
Resubmitted October 28, 2025
San Francisco, California

Before: BERZON, BRESS, and VANDYKE, Circuit Judges.

Petitioner National Labor Relations Board ("NLRB" or "Board") is applying to enforce a final order it issued against respondent Tracy Toyota ("Tracy"). Tracy is cross-petitioning for review of that order, claiming that the NLRB erred in finding numerous violations of the National Labor Relations Act ("NLRA" or "Act"), and that union organizers themselves violated the Act. We have jurisdiction under 29 U.S.C. § 160(e) and (f), and we grant the Board's petition and deny Tracy's cross-petition.

The NLRA gives the NLRB authority to "petition any court of appeals of the United States … for the enforcement of … [an] order and for appropriate temporary relief or restraining order." 29 U.S.C. § 160(e). It also allows any person "aggrieved by a final order of the Board granting or denying in whole or in part the relief sought … [to] obtain a review of such order in any United States court of appeals in the circuit wherein the unfair labor practice in question was alleged to have been engaged in." *Id.* § 160(f). When reviewing an NLRB order, courts look to whether "on the record as a whole there is substantial evidence to support agency findings"

2

of fact.  *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 491 (1951).  A court cannot "displace the Board's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it *de novo*."  *Id.* at 488.

The Hiring of Lopez and Spier

Tracy contends that there was not substantial evidence for the NLRB to find that Steve Lopez and Josh Spier were hired before the commencement of the strike. It asserts that the pre-strike complement of service department technicians was seventeen, not nineteen, and therefore it did not violate the NLRA by failing to hire two additional workers from the Laidlaw List after the end of the strike.  There is, however, substantial evidence to support the NLRB's conclusion that there were nineteen service department employees before the strike.

Under the NLRA, when a worker goes on strike, he does not lose his job, but rather is entitled to reinstatement after the conclusion of the strike.  *See N.L.R.B v. Fleetwood Trailer Co.*, 389 U.S. 375, 378 (1967).  If the employee has made an unconditional offer to return to work, but his former position has been filled by a permanent replacement, he is entitled to a position only when one becomes available. *Sever v. N.L.R.B.*, 231 F.3d 1156, 1160 (9th Cir. 2000) (citing *Laidlaw Corp. v. N.L.R.B.*, 414 F.2d 99 (7th Cir. 1969)).  In the meantime, he is placed on what is often referred to as a "Laidlaw List."  *Id.*  If a genuine vacancy opens up, that vacancy must

3

be filled with a worker off the Laidlaw List first. *Pirelli Cable Corp.*, 331 N.L.R.B. 1538, 1540 (2000). The number of existing vacancies is determined against the number of employees pre-strike, which includes individuals who have accepted a job offer from the employer. *See Solar Turbines Inc. v. Int'l Ass'n of Machinists & Aerospace Workers*, 302 N.L.R.B. 14, 15 (1991), *enforced sub nom. Int'l Ass'n of Machinists & Aerospace Workers v. N.L.R.B.*, 8 F.3d 27 (9th Cir. 1993) (unpublished table decision).

Nothing in the record compels the conclusion that Lopez and Spier were hired after the strike. As for Lopez, the Board found that he was highly credible in his testimony that he interviewed and accepted a job on May 13th, two days before the start of the strike. This was corroborated by his statement that he recorded the interview date in his calendar. Although he may have been onboarded after the strike began, there was sufficient evidence for the Board to credit Lopez's testimony and find that he was hired before the strike. While the HR manager testified that he did not engage in certain onboarding procedures until after the start of the strike, the Board was not required to credit the HR manager's testimony over Lopez's. All that the HR manager established was that it would have been atypical for an offer to be made before onboarding occurred, not that it could not have happened. All of this constitutes substantial evidence for the Board's finding that Lopez was hired before

4

the strike, and that Tracy violated the Act by not selecting someone off the Laidlaw List to fill this spot after the unconditional offer to return to work.

There was also substantial evidence to conclude that Josh Spier was hired before the strike. Although Spier testified that he did not recall his hiring date, the Board credited his testimony from a pre-hearing affidavit in which he said that he was interviewed and offered a job at the beginning of May and reached an agreement as to salary a few days later. The Board also relied on the fact that Spier believed he had the job and stopped looking for work. There is also evidence in the record that Spier indicated he might back out of his initial technician job offer due to the strike, and that in response, Tracy offered him a foreman position. From this the Board concluded that Spier had accepted a position as a technician before the strike and was subsequently offered the higher foreman position. The initial offer and acceptance, the Board found, brought the complement of line technicians up to nineteen. Additionally, although Tracy now contests this point before this court, it appears that counsel for Tracy conceded this point before the ALJ. In its decision, the Board noted that when counsel for Tracy was asked whether he was arguing that Spier had "accepted an offer of employment and then unaccepted it because of things that happened subsequently," Tracy's counsel stated "[e]xactly, and that's what the [documentary evidence] … bear[s] out specifically." Consequently, the record does not compel the conclusion that Spier accepted an offer only after the strike. The

NLRB had substantial evidence to conclude that the pre-strike complement of service department employees was nineteen, and that Tracy violated the NLRA when it failed to recall two additional workers.

Filling Openings After the Strike Ended

The NLRB also found that Tracy committed unfair labor practices by failing to fill vacancies that arose after the strike with Laidlaw List workers. Laidlaw List workers are only entitled to reinstatement to the workforce if, after they have made an unconditional offer to return to work, a "genuine … vacancy" in the workforce occurs. *N.L.R.B. v. Delta-Macon Brick and Tile Co., Inc.*, 943 F.2d 567, 572 (5th Cir. 1991). A genuine vacancy can occur when "the company expands its workforce or discharges a particular employee, or when an employee quits or otherwise leaves the company." *Id.*; *Pirelli Cable Corp.*, 331 N.L.R.B. at 1540 (cleaned up). This also occurs when a permanent replacement hire leaves his job. *Pirelli Cable Corp.*, 331 N.L.R.B. at 1539–40. The Board had substantial evidence to conclude that two genuine vacancies occurred in Tracy's service department after the strike, and that Tracy violated the NLRA by failing to recall Laidlaw List workers to fill those positions.

The first vacancy occurred when a permanent replacement technician, Edgar Sanchez, failed to show up for work. When he failed to report for duty, the position became abandoned, and a genuine vacancy occurred. Tracy did not recall a Laidlaw

6

List worker, but instead demoted a currently working foreman to fill this position. The second vacancy occurred when Spier quit his foreman job. Because he was an employee who quit after the end of the strike, a Laidlaw vacancy occurred when he left. Tracy attempted to promote a currently working technician to fill this opening. Although the technician declined the job, Tracy was under an obligation to first offer that position to a Laidlaw List worker. The NLRB had substantial evidence to conclude that two Laidlaw vacancies arose, and that Tracy violated the Act, by not offering those positions to Laidlaw List workers.

Supervisory Status of Foremen

Tracy, in its cross-petition, asserts that two shop foremen unlawfully engaged in pro-union conduct. It alleges those foremen were supervisors under the Act, and thus, by being involved in union efforts, they necessarily were "intimidating, coercing[,] and interfering with employee free choice in the election."

Workers classified as supervisors under the NLRA are excluded from its protections. *See N.L.R.B. v. Ky. River Cmty. Care, Inc.*, 532 U.S. 706, 708 (2001). To be classified as a supervisor, the employee must: (1) "hold the authority to engage in [certain] … supervisory functions" listed in § 152(11), (2) exercise his authority not merely in a routine or clerical way but instead with "independent judgment," and (3) hold his authority "in the interest of the employer." *Id.* at 713. The NLRB's determination that the shop foremen were not supervisors, and therefore their

7

participation in pro-union activities did not taint the union election, is supported by substantial evidence.

Specifically, the NLRB's finding that foremen at Tracy do not exercise true independent judgment is supported by substantial evidence. The majority of the work done by foremen in directing technicians is dictated by the various automated systems they use to determine which technician should be assigned to each job. The Board, looking at the evidence in the record, concluded that work assignments at Tracy are largely dictated by the times projects are due, technician availability, and certification requirements. The Board also concluded that the "good" jobs and "bad" jobs were assigned evenly among the workforce so as to fairly dispatch all the work. They were not assigned as a reward or punishment. Finally, the Board also relied on the fact that technicians could refuse to do a specific job. Overall, the record does not compel different conclusions on each of these findings, or that the foremen exercise significant independent judgment in assigning work or in any of their other functions. Thus, there was substantial evidence supporting the NLRB's conclusion that there was no improper interference in the union election by statutory supervisors.

Subpoenas

Tracy also challenges the NLRB's holding that it unlawfully subpoenaed two shop foremen for their communications with the NLRB. The NLRB found that a

subpoena requesting such information is inherently coercive. The only argument Tracy makes on this point is that the subpoenas did not violate the Act because the shop foremen are statutory supervisors and thus not protected by the NLRA. But as just explained, the NLRB's conclusion that Tracy foremen are not statutory supervisors is supported by substantial evidence. Consequently, Tracy's challenge to the subpoenas fails.

Remedies Under *Thryv*

Finally, Tracy waived any challenge to the NLRB's order of "make whole" remedies by failing to object to the remedies before the NLRB. 29 U.S.C.A. § 160 ("No objection that has not been urged before the Board, its member, agent, or agency, shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances."); *see also Woelke & Romero Framing, Inc. v. N.L.R.B.*, 456 U.S. 645, 665 (1982) (holding that, if an employer "could have objected to the Board's decision in a petition for reconsideration or rehearing," the "failure to do so prevents consideration of the question by the courts").

The Board's order is **ENFORCED**, and Tracy's petition is **DENIED**.